Louise OREBO and Tom Gore, Jr.,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 17285.

United States Court of Appeals
Ninth Circuit.

Aug. 1, 1961.

748

Richard D. Esbenshade, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief Criminal Division; Ernest A. Long, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, ORR and BARNES, Circuit Judges.

ORR, Cricuit Judge.

Appellants stand convicted of selling and concealing narcotics in violation of 21 U.S.C.A. § 174. The Government's principal witness Louis Peterson, was a paid informer, who had been previously convicted of narcotics violations.

The said informer testified directly to several meetings with appellants, during two of which the alleged violations of federal law took place. The informer's testimony was in most part corroborated by regular federal agents who "supervised" his dealings with appellants. The details of the actual delivery of the drug took place during a very limited time in

which the informer was alone with one or both of appellants.

One such transaction occurred in the hall in front of Peterson's apartment during which time the door was ajar and a Treasury Agent, one Aubrey Roumo, was seated inside. The second took place just outside the building in which Peterson's apartment was situated and at the foot of the stairway. Here also Agent Roumo was stationed in the room. Immediately before each transaction, Peterson was thoroughly searched by a Government agent to make sure that no narcotics or money, other than that involved in the very transaction about to be consummated, were on his person.

Appellants urge three alleged errors. They are, (1) that the argument of the District Attorney was prejudicial; (2) refusal to give a requested instruction; and (3) the definition of entrapment given by the trial judge.

Appellants argue that the District Attorney expressed his personal belief as to the guilt of appellants and personally vouched for the credibility of the Government's principal witness.

■ In order to hold fatally erroneous the prosecuting attorney's references to appellants' probable guilt, we must be able to say that the remarks, fairly construed, were based on the District Attorney's personal knowledge apart from the evidence in the case and that the jury might have so understood them. Henderson v. United States, 6 Cir., 1955, 218 F.2d 14, 50 A.L.R.2d 754, certiorari denied 1955, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 and United States v. Battiato, 7 Cir., 1953, 204 F.2d 717. From the form of the statements (set forth in the footnote [1]) and the context in which they appear, we think that reasonably construed they plainly refer only to evidence then properly before the jury. See People v. Ross, 1953, 120 Cal.App.2d 882, 262 P.2d 343. While the District Attorney has special obligations of fairness in seeing that justice is done, Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, he is also an advocate having an equally weighty duty of urging upon the jury all legitimate inferences from the evidence or "facts" in the case. O'Malley v. United States, 1 Cir., 1955, 227 F.2d 332.

■ We notice that no objection was made to the District Attorney's allegedly improper statements during his oral argument. The quoted statements of the District Attorney alleged to be improper suggest at most an occasional slip of the tongue not unknown in extemporaneous speaking. This type of error would be easily correctible by the trial court upon seasonable objection. See Pacman v. United States, 9 Cir., 1944, 144 F.2d 562.

■ We are permitted to scan only the cold print of the record, and therefore should weigh carefully the findings of the trial judge, who saw and heard the actual events, and found no prejudice. See United States v. Holt, 7 Cir., 1939, 108 F.2d 365 and Tuckermann v. United States, 6 Cir., 1923, 291 F. 958, 959.

■ The District Attorney's reference to the credibility of the Government's principal witness [2] was similarly within the scope of proper argument. The credibility of the witness Peterson was naturally in issue. It had been challenged repeatedly by appellants' counsel in cross-examination and argu-

[1]. "I feel, ladies and gentlemen, from the facts there is absolutely no doubt * * * that Miss Orebo violated the * * * Act * * *."

"I don't think there is any doubt—I submit to you, ladies and gentlemen, there is no doubt that Mr. Gore * * * also was in violation of federal law * * *."

"I feel that these facts show beyond any reasonable doubt that both of these people were involved in criminal activity * * *."

"I think that when you have taken the facts and weighed them * * * you will find that the defendants are guilty * * *."

[2]. "I submit to you, ladies and gentlemen, that we never would have put him on the stand if we didn't feel he was going to tell the truth."

ment, even though his testimony had been supported by other Government witnesses. Under the circumstances the inferences drawn by the District Attorney in his argument had firm support in the record. Compare Lawn v. United States, 1957, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed. 2d 321 with United States v. Spangelet, 2 Cir., 1958, 258 F.2d 338, Stewart v. United States, 1957, 101 App.D.C. 51, 247 F.2d 42, and Taliafero v. United States, 9 Cir., 1931, 47 F.2d 699. Nowhere did the District Attorney undertake the role of a "13th juror" in offering to the jury his personal views as was the case in Greenberg v. United States, 1 Cir., 1960, 280 F.2d 472.

■ Appellants contend that the trial court erred in refusing to give, in terms, a requested instruction on the subject of the credibility of a paid informer.[3] The question is thus sharply presented whether a special instruction on credibility directed specifically toward this particular witness, Louis Peterson, was required in the circumstances of this case. We think that the instruction which was given,[4] together with other cautionary remarks of the trial court occupying almost two pages of the record, amply warned the jury of the care which must be taken in weighing such testimony.

The result might be otherwise where there was no direct evidence which was untainted, Freed v. United States, 1920, 49 App.D.C. 392, 266 F. 1012, where there was only minor corroboration of the witness, United States v. Masino, 2 Cir., 1960, 275 F.2d 129, or where the instruction which was actually given was less cautionary. See e. g., Transcript of Testimony, p. 177, in Fletcher v. United States, 1946, 81 U.S.App.D.C. 306, 158 F.2d 321. But here there was corroboration of every activity of the informer-

witness consistent with effective law enforcement. Both the Masino and Fletcher cases recognize that a defendant's rights are protected through either corroboration or a special instruction, and in those cases there was an utter lack of corroboration of material elements of the crime charged; thus a special instruction was said to be required. In an assumed factual situation similar to the instant case, the United States Supreme Court has indicated that it would require no more than was given here: " * * * careful instructions." On Lee v. United States, 1952, 343 U.S. 747, 757, 72 S.Ct. 967, 96 L.Ed. 1270 (emphasis ours).

■■ The last assignment of error to be considered centers on the trial judge's characterization of the concept of entrapment as using "a thief to catch a thief." It is certainly true that a judge, in addressing a jury, must be extremely careful not to convey an implicit judgment of the merits of the case. Starr v. United States, 1894, 153 U.S. 614, 14 S. Ct. 919, 38 L.Ed. 841. Yet the simple illustration used here to explain a sometimes complex legal doctrine conveys to the jury no impression of pre-judgment by the court. See Federal Rules of Criminal Procedure, rule 52(a), 18 U.S.C.A.

■ We are satisfied that the test of due process and a fair trial laid down by the Supreme Court in Kotteakos v. United States, 1946, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 is met here:

"If, when all is said and done, the conviction is sure that error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress."

Affirmed.

---

3. The requested instruction was: "All evidence of a witness who was a paid informer must be examined with greater scrutiny than the testimony of an ordinary witness."

4. The court did give, *inter alia*, this instruction: "All evidence of a witness whose self interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused, should be considered with caution and weighed with great care."