UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry Robert EDDINGTON, Defendant-Appellant.

No. 14323.

United States Court of Appeals
Seventh Circuit.

Feb. 18, 1964.

Rehearing Denied March 23, 1964.

R. G. Heckenkamp, Springfield, Ill., for appellant.

Edward R. Phelps, U. S. Atty., Leon G. Scroggins, Asst. U. S. Atty., Springfield, Ill., for appellee.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Larry Robert Eddington, defendant, has appealed from his conviction and sentence on count I of indictment No. 6209 charging that on July 8, 1961 he transported Martha Barber from Koontz Lake, Indiana to Quincy, Illinois, for the purposes of prostitution, debauchery and other immoral purposes, in violation of 18 U.S.C.A. § 2421, and on count I of indictment No. 6244, charging conspiracy.

The conspiracy count alleged that defendant conspired with Ruth Lehne, also known as Jackie Rogers, to keep in a house in Quincy, Illinois, for the purpose of prostitution, Martha Barber, an alien woman, within three years after she had entered the United States from a country party to the arrangement adopted in 1902 for the suppression of white slavery traffic, and by failing to file a statement with the proper official giving the facts as to her entry and alleging that the woman's procuration to come to this country was within the knowledge of defendant, in violation of 18 U.S.C.A. § 2424.

Also charged, in violation of 18 U.S.C.A. § 371, were overt acts committed in furtherance of the conspiracy, including the receipt by defendant from Martha Barber of the proceeds of acts of prostitution at said house.

Defendant was sentenced to confinement for five years in case No. 6209, and two years in No. 6244, to be served consecutively.

1. In case No. 6209, prior to trial defendant made a motion for a bill of particulars under 18 U.S.C.A., rule 7(f), in which he asked detailed information as to (1) the route, (2) mode or means of transportation, (3) places where Barber intended to or did commit acts of prostitution, (4) names and addresses of any witnesses "the government intends to use as intent witnesses", together with any statements which the government intended to use, (5), the names and addresses of other persons who had anything to do with the alleged transportation, (6) Barber's prior criminal record, if any, (7) as well as such record of any other government witnesses, and (8) the names and addresses of any person whose statement to the government "contradicts, negates, impeaches, limits or refutes the charges laid in the indictment."

The motion was allowed in part and denied in part and defendant now claims error in respect only to the "refusal to reveal identity of intent witnesses". While there are rules providing for discovery in criminal cases, such as 18 U.S.C.A. rules 16 and 17(c), they have no application to a request by a defendant for the identity of witnesses to be called by the prosecution. This case did not involve the use by the prosecution of an informer, such as did Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639, to which defendant makes reference in his brief but admits that it is not precisely in point. Roviaro involved the disclosure of the identity of an informer. The obligation of the government to disclose the identity of its witnesses generally has not been required by the courts.

Actually, upon the trial, the testimony of two officers from South Bend was offered by the prosecution for the purpose of corroborating the testimony of Barber. The purpose of the government was to show by various circumstances that Barber had on several occasions been beaten by defendant and cut with a knife in March or April, 1962, because she threatened to cooperate with federal authorities. So the government introduced the testimony of detective John F. Pajor of the South Bend police department. He said that on April 23, 1962, he investigated a complaint for assault and battery, went to Barber's apartment and found

bruises and black and blue marks about her left ear. Officer Frank Vellner, who was also there, saw bruises about Barber's ear and shoulder. He took photographs thereof.[1]

The government's purpose in offering the foregoing evidence was to show a continuing harassment of Barber by defendant in order to halt her cooperation with federal authorities and keep her from testifying. The government points out that the importance of such evidence against defendant was recognized even by him, because, under date of October 4, 1962, he procured from her a sworn statement purporting to retract her testimony before the grand jury which indicted him. This was offered in evidence by the defense.

■ The evidence of the South Bend police officers was properly admitted on the theory that it tended to show the forcible domination of defendant over Barber and, therefore, contributed to the conclusion, which the jury could have reached, that Barber did not originally voluntarily enter the house of prostitution and was not free to go and come while there.

■ 2. Furthermore, we believe that the government was properly permitted to introduce, as additional proof of intent by defendant, the testimony of Geraldine Sue Campbell, 23 years old at the time of the trial, who prostituted herself to defendant in November, 1960 and, beginning in January 1961, worked at her profession, giving him her earnings, after paying her rent therefrom, until some time in March, 1961. In the meantime she was pregnant and defendant arranged an abortion for her in February, 1961, and thereafter she became "real sick" and broke off relations with him. All of this evidence was admitted without objection from defense counsel.

I. These were introduced at the trial as government exhibits Nos. 4, 5, 6 and 7.

2. At the close of Campbell's direct examination, defense counsel moved that

It is defendant's contention that the acts testified to by Campbell took place some 5 or 6 months before the date of the offenses herein involved and thus were remote in point of time.[2] The government points out that the transportation charged in the indictment here occurred on July 8, 1961, which is within four months of March 1961, when Campbell was still working as a prostitute for defendant.

Both sides rely upon United States v. Krulewitch, 2 Cir., 145 F.2d 76 (1944). There it was recognized as a general rule that, if evidence is relevant to prove one crime, it does not become inadmissible because it also proves another. Moreover, at 80, the court there said:

"The other question is of the admission of a part of the testimony of one, Mary Smith—also a prostitute—who swore that the accused had lived off her earnings while she was so engaged. So far, her testimony was competent upon the issue of his purpose in taking Joyce to Florida, for it fell within the well-established doctrine that other instances of similar conduct are competent to prove intent (or purpose) upon the occasion for which the accused is on trial. * * *"

The court pointed out, by contrast, that, insofar as Mary Smith's testimony related to defendant's rape of her, that fact did *not* tend to prove that he was living off Joyce's earnings. The Campbell situation existing in the case at bar justifies an application of the *general* rule announced in Krulewitch.

To the same effect is Neff v. United States, 8 Cir., 105 F.2d 688 (1939), a prosecution for a similar offense as that involved in this case. The court held, at 692, that there was no abuse of discretion on the part of the trial court in

her testimony be stricken on the ground of remoteness. The objection was overruled.

the admission of evidence tending to show a promiscuous disregard of the chastity of young girls which, if established, would have a direct bearing upon the purpose and intent with which the interstate transportation there involved was made.

To the same effect is United States v. Pape, 2 Cir., 144 F.2d 778 (1944).

3. At the close of the government's case, defendant moved the court to enter a directed verdict of acquittal, which was denied, on the ground (now reasserted in this court) that the trip from Koontz Lake, Indiana to Quincy, Illinois, was part of a round trip made for innocent purposes. Defendant relies on Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331. While we have relied on the Mortensen case when the evidence justified its application, United States v. Hon, 7 Cir., 306 F.2d 52, it seems clear that the inquiry in the case at bar relates to the purpose of the transportation of Barber from Koontz Lake, Indiana, to Quincy, Illinois. Her destination in Quincy was a place to which she was introduced by defendant and where the jury was justified in finding he intended returning her. The lack of an innocent purpose for that journey has been established by the verdict of the jury, which has been upheld by the district court. Mortensen is not applicable here. We believe that United States v. Nichol, 7 Cir., 323 F.2d 633 (1963) does apply. There was evidence that, when Barber left Quincy to go to Koontz Lake, she intended to "leave completely", and did not intend to go back to Quincy, and that she thought Lehne knew that she was leaving and not coming back. When she left Quincy she did not leave her belongings, except, "the dresses I had to wear there". In Koontz Lake she quarreled with defendant because she did not want to go back to Lehne's. She was afraid of defendant.

It is obvious that the jury would have been justified in believing that the trip from Koontz Lake to Quincy was for the independent purpose of prostitution and was not of the innocent character with which defendant's counsel would clothe it.

4. Defendant argues that the proof of conspiracy did not meet the requirements necessary to establish guilt. We disagree.

The evidence tended to show that defendant and Lehne, the alleged co-conspirators, in several ways acted in unison to place Barber in Lehne's house of prostitution. Both conspirators knew that she was an alien who had not been in this country for a period of three years. The jury was justified in finding that the conspiracy had been proved against both the conspirators.

For all of these reasons, the convictions and sentences from which this appeal has been taken are affirmed.

Affirmed.