UNITED STATES of America,
Plaintiff-Appellee,

v.

Rick DE LA TORRE and Ben Garcia,
Defendants-Appellants.

No. 78–5608.

United States Court of Appeals,
Fifth Circuit.

Oct. 18, 1979.

---

2. U. S. Const. amend. I provides, in part, "Congress shall make no law respecting an establishment of religion . . . ."

Joseph S. Chagra, Charles Louis Roberts, El Paso, Tex., for defendants-appellants.

Leroy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, CLARK and GEE, Circuit Judges.

GEE, Circuit Judge:

Appellants De la Torre and Garcia were indicted on four counts charging conspiracies to import and possess cocaine and conspiracies to import and possess marijuana. They were convicted on one count of conspiracy to import marijuana and acquitted on the other three counts.

De la Torre was vice president of a bank in El Paso, Texas, and Garcia was a public relations representative of Loyola Marymount University in California. They were mutual friends of Joe Renteria, a singer and the apparent leader of a continuing conspiracy to import marijuana and cocaine from Colombia. Undercover agents infiltrated the smuggling operation and helped plan the importation of one planeload of contraband but arrested the participants before the actual importation. They testified at trial regarding those plans, implicating De la Torre and Garcia. Both defendants took the stand, gave reasonable hypotheses of innocence for their actions, and denied intentional and knowing involvement. On appeal defendants assert several errors, only one of which requires our extended attention.

After the evidence was closed and the jury retired to deliberate, the trial judge designated a magistrate to receive its verdict. To this counsel for defendants agreed. About two hours later, the jury sent out a note requesting that "that portion of the charge dealing with what constitutes conspiracy be provided to us." The magistrate advised the jury that it would be necessary for him to consult the trial judge before responding and recessed it for lunch.

After the jury returned, the magistrate told it that he had spoken to the judge and that, pursuant to his instructions, he would re-read the portions of the charge dealing specifically with conspiracy. He then did so. When he had concluded, defense counsel approached the bench and requested that the charge's definitions of "specific intent," of "knowingly," and of "willfully" —terms that figured prominently in the conspiracy charge—be re-read as well.

The magistrate inquired of the government as to its position on this request and received the suggestion that he should ask of the jury, as he had previously stated he would, if what had been read satisfied their inquiry. When the magistrate agreed that this was the proper course, defense counsel objected to the refusal to re-read the items he had requested. The magistrate replied that his objection would be "recorded." He then asked the foreman whether what he had read "satisfies your question." She responded that it did; the jury retired and shortly returned a verdict. Distressed as we are that this entire laborious prosecution must be set at naught for one small failing, we must reverse.

It is the defendant's right to have an Article III judge rule on his counsel's

objections and requests for instructions to the jury, at least absent waiver of that requirement by counsel. *See United States v. Boswell*, 565 F.2d 1338 (5th Cir. 1978). It was scarcely, if at all, less improper for the magistrate and the jury, singly or in concert, to decide what was a full and proper re-charge on the law in answer to their question than it would have been for them to decide what the original charge should advise them about it. Of course, the jury may phrase its own inquiries to the court and phrase them as it pleases. But once they are made, it is for the trial judge to construe them and to determine the content and form of the answer to be returned. Here this was not done; instead, the magistrate made that determination, though in a small matter, and effectively overruled counsel's objection to the content of the answer that he made. Here was error, small but clear.

Nor can we say it was harmless. The definitions requested to be re-read were crucial to a comprehension of the conspiracy charge. Had they been requested and refused at the charge conference, a reversal of any conviction would, absent some special or excusing circumstance, likely have followed. We can no more say that the refusal to re-charge them may not have affected the jury's verdict than we can say that a refusal to charge them to such effect in the first place may not have done so. Despite suggestions from some quarters to the contrary, such determinations are beyond our powers to make.[1] In closing this head we add, lest our ruling be misunderstood, that we do not here hold anything whatever about the substantive content of charges to juries or answers to their questions. Nor do we hold that the procedure followed here might not have resulted in error merely harmless, as did a somewhat similar one in *Boswell, supra*. We do hold that the ruling of the magistrate was not for him but for the judge, exercising his own discretion in the circumstances, to make and that we cannot determine that in this instance the magistrate's usurpation of the judge's function, over counsel's objection, was harmless.

The other errors asserted are unlikely to recur; hence we do not pass on them. The judgments of conviction must be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

---

1. "We all know that just being a lawyer doesn't make a man a magician or give him supernatural powers. Only an appointment to the federal judiciary can do that." Dewitt Hale, then chairman, Judiciary Committee, Texas House of Representatives.