**UNITED STATES of America, Plaintiff/Appellee,**

v.

**Phillips Lee SAUNDERS, Defendant/Appellant.**

**No. 79–1699.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1980.

Decided Oct. 2, 1980.

As Amended Feb. 2, 1981.

---

Before TRASK, ANDERSON and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Phillips Lee Saunders appeals his convictions for violation of 18 U.S.C. § 2423 (1976) (amended 1978), prohibiting transportation of a minor in interstate commerce for purposes of prostitution, and for violation of 18 U.S.C. § 2421 et seq. (1976) (Mann Act), prohibiting transportation of women in interstate commerce for purposes of prostitution. He contends (1) that the jury was coerced, (2) that the magistrate's decision on the timing of jury deliberations amounted to a supplemental jury instruction, (3) that the prosecutor improperly referred to his personal belief, (4) that he was prejudiced by pre- and post-indictment delay, (5) that the Mann Act count of the indictment was duplicitous, and (6) that evidence of his subsequent illegal acts was improperly admitted. We affirm.

In the summer of 1975, two young women ages 14 and 19 worked as prostitutes for Saunders in Seattle, Washington. In September 1975, they went at Saunders' di-

rection to Portland, Oregon, where Saunders joined them. The younger woman attempted to work there as a street prostitute but was picked up by police as a runaway juvenile and returned to Seattle. Saunders and the older woman returned to Seattle as well, and the younger woman ran away from home again and joined them. Saunders then announced to the older woman that they would travel to Jacksonville, Florida, where she would work as a prostitute. In September or October 1975, the three of them traveled to Portland by train. There Saunders acquired a car in which they traveled to Florida. En route they stopped in cities in Idaho, Utah, Arizona, New Mexico, Oklahoma, and Georgia, reaching Florida in November. In several of the cities, including Tampa and Jacksonville, Florida, both young women worked as prostitutes and gave all their earnings to Saunders.

Saunders was indicted in October 1978. The second count of the indictment charged one violation of the Mann Act for the entire trip from Seattle to Florida. Saunders' trial was delayed until August 1979, because until then he was in the custody of Canadian authorities. The crimes for which he was indicted were not extraditable crimes under the extradition treaty between the United States and Canada. Saunders' motion to dismiss the indictment due to delay was denied by the district court.

The jury in Saunders' trial began deliberating on a Friday at about 4:30 p. m. Shortly before 6:00 p. m., the full-time magistrate who had been left in charge of the proceedings sent for the jury. When he learned that a verdict was not imminent, he asked the jury to reconvene on Monday morning as the trial judge had instructed him to do. Three jurors informed the magistrate that they could not be present on Monday. No jurors objected to staying later on Friday or to returning on Saturday morning. Although the magistrate was unable to contact the trial judge, he instructed the jury to continue deliberations that evening. Since it was too late to make a dinner reservation, the magistrate arranged for sandwiches and drinks to be brought to them. He instructed the jury not to hurry

their deliberations. Half an hour later, the jury returned a guilty verdict. Saunders moved for a mistrial both before the jury was sent back out and after the verdict was received. Both motions were denied by the magistrate.

█ First, Saunders contends that his Sixth Amendment right to trial by an impartial jury was violated because the jury was coerced. He cites cases which hold that a court may not imply that the jury must reach a verdict. *See, e. g., United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *United States v. Seawell,* 550 F.2d 1159 (9th Cir.), *cert. denied,* 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 666 (1978). Saunders argues that the magistrate's direction to continue deliberations, on a hot Friday night and without a proper dinner, indicated that the court wanted the jury to reach a verdict that evening. This argument is without merit. When the magistrate was informed by the foreman and two other jurors that they would be unable to reconvene on Monday morning, he simply determined to have them continue deliberations into the evening and, if necessary, to reconvene on Saturday morning. No jurors objected to this schedule. The magistrate specifically instructed the jury not to hurry its deliberations. In these circumstances the jury was not coerced and Saunders was accorded his Sixth Amendment right to trial by an impartial jury.

Second, Saunders contends that, even if the continuation of jury deliberations on Friday night did not violate his Sixth Amendment rights, the magistrate exceeded his authority in directing the jury to continue deliberations and in rejecting Saunders' objections to the procedure. Saunders does not argue that the trial judge's delegation of authority did not purport to cover the magistrate's actions. Nor does he assert that the delegation was contrary to statute or rule. *See* 28 U.S.C. § 636(b)(3), (4) (1976); W.D.Wash.Mag.R. 9(e); *cf. Wingo v. Wedding,* 418 U.S. 461, 469–74, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974)

(holding that habeas corpus statute precludes district court's assignment of evidentiary hearings in habeas cases). Instead, Saunders relies solely on a constitutional separation-of-powers argument.

■ Article III requires that Congress give federal judges lifetime tenure and undiminishable salaries. These guarantees are designed to promote the independence of the federal judiciary as a separate and coequal branch of government. Full-time magistrates serve for eight-year terms, 28 U.S.C. § 631(e) (1976), and may be removed for "incompetency, misconduct, neglect of duty, or physical or mental disability," 28 U.S.C. § 631(h) (1976) (redesignated § 636(i) 1979). Although the Magistrates Act guarantees that a magistrate's salary shall not be diminished during his term of office, 28 U.S.C. § 634(b) (1976), this protection is only statutory and may be repealed by Congress. The Magistrates Act delegates appointment and removal powers to the federal judiciary. 28 U.S.C. § 631(a), (h) (1976) (subsection (a) amended 1979; subsection (h) redesignated subsection (i) 1979). In view of these factors, we recognize that magistrates are not Article III judges. Nonetheless, Congress has delegated certain judge-like functions to magistrates.

■ Since *American Insurance Co. v. 356 Bales of Cotton (Canter)*, 26 U.S. (1 Pet.) 511, 546, 7 L.Ed. 242 (1828), the Supreme Court has recognized that Congress may establish "legislative courts" whose judges do not enjoy Article III guarantees. Such courts have been upheld when their jurisdiction is limited to the territories, *Canter*, 26 U.S. (1 Pet.) at 546, to local matters arising in the District of Columbia, *Palmore v. United States*, 411 U.S. 389, 390–91, 409–10, 93 S.Ct. 1670, 1672–73, 1682–83, 36 L.Ed.2d 342 (1973), and to limited subject matter, *see Gosa v. Mayden*, 413 U.S. 665, 686, 93 S.Ct. 2926, 2939, 37 L.Ed.2d 873 (1973) (Court of Military Appeals as a legislative court). The Court has indicated,

however, that "inherently judicial" tasks must be performed by Article III judges. *See, e. g., Glidden Co. v. Zdanok*, 370 U.S. 530, 549, 82 S.Ct. 1459, 1472, 8 L.Ed.2d 671 (1962); *Ex parte Bakelite Corp.*, 279 U.S. 438, 458, 49 S.Ct. 411, 458, 73 L.Ed. 789 (1929).

In *United States v. De la Torre*, 605 F.2d 154 (5th Cir. 1979), a magistrate who had been authorized to receive the jury verdict refused the defendant's request to have certain instructions re-read to the jury. The Fifth Circuit held this to be reversible error, stating that "[i]t is the defendant's right to have an Article III judge rule on his counsel's objections and requests for instructions to the jury .... " *Id.* at 155–56. Saunders argues that *De la Torre* requires that an Article III judge rule upon his objections to jury scheduling.

■ We find it unnecessary to decide whether the magistrate here performed an inherently judicial function. Despite the requirement that such functions be performed by Article III judges, the Supreme Court has recently upheld the constitutionality of certain judicial actions by magistrates. Under the "para-judge" rationale, the Magistrates Act comports with Article III because it subjects magistrates' rulings to de novo determination by a federal district judge. *See United States v. Raddatz*, 447 U.S. 667, 681–684, 100 S.Ct. 2406, 2415–16, 65 L.Ed.2d 424 (1980) (magistrate conducted suppression hearing); *Mathews v. Weber*, 423 U.S. 261, 266–72, 96 S.Ct. 549 (1976) (social security case referred to magistrate for preliminary findings and recommendation). Thus, the Supreme Court has allowed magistrates to perform "inherently judicial" tasks when under the supervision of an Article III judge.

■ Because no district court review or supervision of the *De la Torre* magistrate's actions had been established either by statute or by rule[1] the Fifth Circuit did not discuss the "para-judge" rationale. Here, however, Magistrates' Rule 12 of the West-

---

[1.] Several provisions allow district judges to review actions taken by magistrates. Convictions by magistrates in trials of misdemeanors with defendants' consent are reviewable by dis-

trict courts under a "clearly erroneous" standard, R. P. Trial Minor Offenses Before U. S. Mag. 8; *see United States v. Hughes*, 542 F.2d 246, 248 (5th Cir. 1976). Nondispositive pre-

ern District of Washington allows defendants to bring objections to a magistrate's action before the judge.[2] We recognize that both *De la Torre* and this case present a situation where it can be argued that practical considerations render the district judge's supervision ineffective and therefore the magistrate's action may not be justified under the "para-judge" rationale. We reject this argument. If the magistrate had taken any action disagreeable to the trial judge, it would have been the judge's duty to correct it by holding a new trial. To suppose that the trial judge would be dissuaded from carrying out this duty by the public expense of a new trial is to ignore the constitutionally preserved independence of Article III judges upon which Saunders attempts to rely. We therefore hold that, under the "para-judge" rationale of *United States v. Raddatz* and *Mathews v. Weber*, the opportunity for review by the trial judge provided by Magistrates' Rule 12, even though not exercised in this case, precludes Saunders' Article III objections.

■ Third, Saunders contends that he was denied a fair trial because the prosecutor improperly put before the jury his personal belief in Saunders' guilt. In his opening statement, the prosecutor told the jury:

> I'm confident that at the conclusion of these proceedings, when all of the evidence is in, that you will return one verdict, a just verdict, and that is a verdict of guilty.

We have held that

> [i]n order to hold fatally erroneous the prosecuting attorney's references to appellants' probable guilt, we must be able to say that the remarks, fairly construed, were based on the District Attorney's personal knowledge apart from the evidence in the case and that the jury might have so understood them.

*Orebo v. United States*, 293 F.2d 747, 749 (9th Cir. 1961), *cert. denied*, 368 U.S. 958, 82 S.Ct. 402, 7 L.Ed.2d 389 (1962). Here, the prosecutor's statement, fairly construed, was neither based on his personal knowledge apart from the evidence nor so understood by the jury.

■ Fourth, Saunders contends that he was denied (a) due process due to pre-in-

---

trial determinations of magistrates are similarly subject to reconsideration by the district judge if "clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A) (1976), while rulings on dispositive pretrial motions are subject, upon objection by a party, to de novo review by the district judge, 28 U.S.C. § 636(b)(1), (b)(1)(B), (b)(1)(C) (1976); *see Orand v. United States*, 602 F.2d 207, 208–09 (9th Cir. 1979) (§ 2255 evidentiary proceeding). Federal Rule of Civil Procedure 53(e)(2) provides for review of magistrates' actions when they act as special masters. Because the actions challenged in *De la Torre* and here were taken under the general grant of authority to delegate additional duties to magistrates, 28 U.S.C. § 636(b)(3) (1976), the only authority in statute or rule for review resides in local rules promulgated under 28 U.S.C. § 636(b)(4) (1976). At the time of the *De la Torre* trial, the Rules for the Exercise of Powers and Performance of Duties by United States Magistrates in the Western District of Texas provided for district court review only in misdemeanor cases tried by magistrates. W.D. Tex.Mag.R.I(p)(3) (adopted Nov. 9, 1977, repealed Apr. 7, 1980).

The Eighth Circuit has held that in most cases district courts have inherent power to review final decisions of magistrates. *Bruno v. Hamilton*, 521 F.2d 114, 116 (8th Cir. 1975). The Fifth Circuit in *De la Torre* did not consider whether such an inherent power existed, whether it applied there, or whether it provided adequate supervision to invoke the "para-judge" rationale. Because local rules specifically allow review here, *see* note 2 *infra*, we do not reach any of these issues.

2. Rulings, orders, or other actions by a Magistrate in this District, review of which is not otherwise specifically provided for by law or these rules shall, nevertheless, be subject to review by the District Court as follows:

Any party may file and serve, not later than 10 days thereafter, an application for review of the Magistrate's action by the District Judge having jurisdiction. Copies of such application shall be served promptly upon the other parties, the District Judge, and the Magistrate.

After conducting whatever further proceedings as he deems appropriate, the District Judge may adopt or reject, in whole or in part, the action taken by the Magistrate, or take such other action as he deems appropriate.

W.D.Wash.Mag.R. 12.

In holding that Magistrates' Rule 12 allows district court review of the magistrate's action in this case, we do not intimate that failure to seek such review waives any right to another means of review.

dictment delay and (b) his Sixth Amendment right to a speedy trial due to post-indictment delay. To determine whether a defendant has been denied due process due to pre-indictment delay, the court must balance the gravity of actual prejudice with the reasons for the delay. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Stone*, 633 F.2d 1272 (9th Cir. 1979). The prejudice of which Saunders complains is the death of a potential witness in 1977. The burden was on him to show actual prejudice, *United States v. Mays*, 549 F.2d 670, 677 (9th Cir. 1977), and to show that the prejudice was definite and not speculative, *id.* Saunders presented an affidavit of a third person who said that the deceased witness told him that the older woman had said that she was going to Portland to get away from Saunders, not at his direction. Saunders argues that this statement was crucial to undermining the older woman's testimony. However, the older woman testified that she went to Portland twice, once at Saunders' direction and once with Saunders. Her testimony about both trips was corroborated by the younger woman. Given the contradictory nature of this testimonial evidence, the prejudicial effect of the deceased witness's missing testimony was indefinite and speculative. Here, in considering the reasons for the delay, the district judge found as a fact that the government had not been remiss in its duty to initiate prosecution. The district court did not err in finding the balance to weigh in the government's favor.

To determine if a defendant has been denied a speedy trial due to post-indictment delay, the court should consider (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. The delay here was for less than a year. The reason for the delay, that defendant was in the custody of foreign authorities for an non-extraditable offense, was a valid one: The prosecution has no duty to attempt to obtain a defendant under such circumstances. *United States v. Hooker*, 607 F.2d 286 (9th Cir. 1979), *cert. denied*, 445 U.S. 905, 100 S.Ct. 1083, 63 L.Ed.2d 321 (1980). Here Saunders neither asserted his right nor showed any prejudice caused by the post-indictment delay. The district court did not err in refusing to dismiss the indictment due to delay.

Fifth, Saunders contends that the Mann Act count of the indictment is duplicitous because it alleges several interstate crossings.

Duplicity is the joining in a single count of two or more distinct and separate offenses. One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense. This may conflict with a defendant's Sixth Amendment rights and may also prejudice a subsequent double jeopardy defense. Duplicity may also give rise to problems regarding the admissibility of evidence, including its admissibility against one or more codefendants.

*United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). However, an indictment is not duplicitous

because it charges as one ... offense a single completed transaction instead of charging in separate counts as many offenses as the evidence ... might conceivably sustain.

*Mellor v. United States*, 160 F.2d 757, 762 (8th Cir.), *cert. denied*, 331 U.S. 848, 67 S.Ct. 1734, 91 L.Ed. 1858 (1947). Two interstate crossings can be joined in one Mann Act count when, as here, there is evidence upon which the jury could conclude that they constituted one trip. *United States v. Kennedy*, 442 F.2d 444, 445 (10th Cir. 1971). *See also United States v. Fruge*, 492 F.2d 1163, 1165 (5th Cir.), *cert. denied*, 419 U.S. 856, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974).

Finally, Saunders contends that the district court erred in admitting evidence from the two young women about (a) prostitution which occurred after they left Portland, (b) assaults by Saunders upon the women, (c) coercive working conditions of the women in Georgia, and (d) instructions given to them by Saunders on how to rob customers. We reject the argument. The

evidence of prostitution was admissible to prove the crime charged. It was also admissible to show intent, plan, and absence of mistake or accident. Fed.R.Evid. 404(b). The other evidence was admissible to show Saunders' forcible domination of the women. *See United States v. Eddington*, 328 F.2d 760, 762 (7th Cir.), *cert. denied*, 379 U.S. 818, 85 S.Ct. 35, 13 L.Ed.2d 29 (1964). *See also United States v. Kelly*, 459 F.2d 10 (9th Cir. 1972).

*Affirmed.*

J. BLAINE ANDERSON, Circuit Judge, concurring:

I concur in Judge Farris' opinion in all respects.

Nevertheless, I feel compelled to emphasize the obvious. The actions of the magistrate were entirely neutral as between the parties and not at all unreasonable. This is especially so when considered in light of the fact that the magistrate was honoring a request or decision of the jurors to continue their deliberations.