**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lois E. Hilton FORD,**
**Defendant-Appellant.**

**No. 86–1098**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1986.
Rehearing Denied Sept. 18, 1986.

Danny D. Burns, Court appointed, Fort Worth, Tex., for defendant-appellant.

Marvin Collins, U.S. Atty., J. Michael Worley, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A federal magistrate presided at the selection of the jury for a felony trial, without objection by the accused. The district judge, however, was present when the clerk administered the oath to the jury and throughout the trial. We hold that the magistrate's participation in jury selection did not violate the statutory provisions regulating the scope of the duties that may be delegated to a magistrate or deny the accused due process of law. We also affirm the defendant's conviction on the charge of covering up a material fact, in violation of 18 U.S.C. § 1001, and her conviction on the charge of theft of a motor vehicle finding no legally significant variation between the indictment and the evidence presented by virtue of a difference in two digits of the identification number of a vehicle otherwise accurately described in the indictment.

1. Fed.R.Crim.P. 24(a).

I.

Two of the four persons charged in a multi-count indictment entered guilty pleas. When trial of the case against the remaining two defendants, Owen Ray Hilton and his erstwhile wife, Lois E. Hilton Ford, was to begin, Judge David Belew, Jr., to whom the case was assigned, was still engaged in the trial of another case. He orally requested Magistrate Alex McGlinchey to preside during the selection of a jury. The magistrate introduced himself to the jury venire, explained the case, and conducted the first part of the voir dire. He then allowed counsel for each side to address the jury and continue with the voir dire. He advised the two defendants, each of whom was represented by different counsel, that they each might have ten peremptory challenges or, if they wished to exercise their challenges jointly, they could have twelve challenges. The defendants agreed to exercise their challenges jointly. After the magistrate granted one challenge for cause, without objection, the parties exercised their peremptory challenges. The jury was then excused. Two days later, the jury was recalled and then sworn before Judge Belew. Prior to trial, no objection to the procedure was lodged either with the magistrate or Judge Belew.

Federal Rule of Criminal Procedure 24 states, "The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination." [1] The prevailing practice in federal court is for the trial judge to preside over the selection of a jury, but the federal rules do not require it. Professor Orfield, in his treatise *Criminal Procedure Under the Federal Rules*, states, "[N]either Rule 24(a) nor the principles of due process require the presence of the trial judge during the selection of a jury, and, as a general rule, the right to have the judge present during the selection of the jury may be waived." [2]

2. 3 L. Orfield, *Criminal Procedure Under the Federal Rules*, § 24.65, at 180 (1966).

The powers of a United States Magistrate are set out in 28 U.S.C. § 636. After authorizing the magistrate to perform certain specific duties,[3] the statute, at § 636(b)(3), states: "A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."[4] The House Report on the bill that was eventually enacted indicates that this "additional-duties" provision is to be broadly construed as authorizing magistrates to perform a wide range of quasi-judicial tasks.[5] It adds that this section "enables the district courts to continue innovative experimentations in the use of this judicial officer."[6] The Legal Manual for United States Magistrates lists as an "additional duty" that may be delegated to a magistrate the "[c]onduct[ing] of voir dire and selecti[ng] of juries for district judge."[7]

In accordance with congressional intent, the authority given courts to delegate to magistrates powers not explicitly mentioned in § 636(a) or (b)(1) & (2) has been held to sanction the delegation of a number of quasi-judicial duties. Thus, in *Mathews v. Weber*,[8] the Supreme Court upheld a district court rule that required initial reference to a magistrate of all actions to review administrative determinations regarding entitlement to Social Security benefits. In *United States v. Saunders*,[9] the Ninth Circuit held that it was permissible

for a magistrate, when the judge left him in charge of a jury during deliberations, to direct the jury to continue its deliberations during evening hours. Even if this action was "inherently judicial," the court found that the magistrate might constitutionally execute it under the supervision of an Article III judge because the magistrate was acting, in effect, as a "para-judge."[10] The Seventh Circuit has held that 28 U.S.C. § 636(b)(3) permitted a magistrate to issue a warrant authorizing the Secretary of Labor to inspect a workplace. The court found the action not inconsistent with the Constitution and federal laws and not forbidden by § 636(b)(1).[11] And this circuit has refused to reverse a conviction on the ground that, when the judge became ill, the magistrate presided during four hours of closing argument.[12]

The question whether the judge must be present when a jury was selected was first raised in *Stirone v. United States*,[13] in which selection of a jury by a deputy clerk was challenged in a collateral attack on a prior conviction. The judge had been present during most of the voir dire but left the bench to go to his chambers when counsel began making their peremptory challenges.[14] Because there had been no objection, the court found that the defendant had waived his right to object to the

3. 28 U.S.C. § 636(a) & (b)(1) & (b)(2) (Supp. 1986).

4. *Id.* § 636(b)(3).

5. H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6162, 6172, *cited in United States v. Rivera-Sola*, 713 F.2d 866, 872 (1st Cir.1983).

6. *Id.*

7. Administrative Office of the United States Courts, *Legal Manual for United States Magistrates* § 3.10(3).

8. 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

9. 641 F.2d 659 (9th Cir.1980), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981).

10. *Id.* at 663–65 (distinguishing *United States v. De La Torre,* 605 F.2d 154, 155–56 (5th Cir. 1979)).

11. *Establishment Inspection of Gilbert & Bennett Mfg. Co.,* 589 F.2d 1335, 1340–41 (7th Cir.), *cert. denied,* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979); *see also Empire Steel Mfg. Co. v. Marshall,* 437 F.Supp. 873, 881–82 (D.Mont. 1977).

12. *United States v. Boswell,* 565 F.2d 1338, 1341–42 (5th Cir.), *cert. denied,* 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 110 (1978) (court found that substitution of magistrate violated Fed.R.Crim. Proc. 25(a), but found violation not of constitutional magnitude).

13. 341 F.2d 253 (3d Cir.), *cert. denied,* 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965).

14. *Id.* at 255.

absence of the judge. Then in a footnote,[15] the Third Circuit added:

> In fairness to the trial judges of this circuit, hereafter in criminal cases, irrespective of suggestion of waiver by the parties, trial judges will not leave the bench during any part of the voir dire or other jury selection process without recessing the court.

Shortly after it decided *Stirone*, however, the Third Circuit, in *Haith v. United States*,[16] affirmed a district court decision approving the selection of a jury by counsel outside the judge's presence. The district court opinion stated that this had been the prevailing practice in both the Eastern and Western Districts of Pennsylvania for many years and the court held that the right to object had been waived by the parties.[17]

The precise issue presented in this case, the selection of a jury by a federal magistrate in a criminal case, was first considered by the First Circuit in *United States v. Rivera-Sola*.[18] The court held that, by failing to object to the procedure initially, the defendant had waived his right to do so. But because this appeared to be the practice in the District Court of Puerto Rico, the appellate court went on to review it and, in a lengthy comment, approved.[19] The court concluded:

> We think that a magistrate can effectively conduct the voir dire and preside at the selection of juries in civil and criminal cases, thus saving valuable time for our busy district court judges. The trial of criminal cases is, however, entrusted to district judges. Preliminary as well as final jury instructions play an important part in the trial of any case. The jury should not be given the impression that

the instructions given it are merely a routine matter of form.[20]

In *United States v. DeFoire*,[21] the Second Circuit reached the same result, relying on the defendant's failure to object to the use of the magistrate.

In these cases, the defendant had not objected, but the Ninth Circuit has found an objection without merit. In *United States v. Peacock*,[22] that court held that the selection of jurors by a magistrate offends neither the statute nor Article III of the Constitution, even when the defendant has timely objected, so long as de novo review of the jury selection procedure by the district court is available.

This conclusion is sound in principle. Magistrates are para-judicials appointed to assist trial judges. The very purpose of their appointment is to minimize the burden on Article III judges of detailed work and thus enable judges to handle a greater volume of truly judicial assignments. When this new judicial office was created, Congress could not foresee the precise scope of the duties a magistrate might perform, so it encouraged innovation and experiment. So long as no inherently judicial task is delegated to the magistrate in violation of the Constitution or the express provisions of the statute, the innovative use of magistrates fulfills Congress' purpose. We therefore hold not only that the right to object was waived, but that objection would have been without merit if voiced.

While the due process argument was not specifically addressed, as such, in any of the cases we have cited, due process requires only fundamental fairness.[23] The

15. *Id.* at 256 n. 3.

16. 342 F.2d 158 (3d Cir.1965), *aff'g per curiam*, 231 F.Supp. 495 (E.D.Pa.1964).

17. 231 F.Supp. at 498.

18. 713 F.2d 866 (1st Cir.1983).

19. *Id.* at 872–73.

20. *Id.* at 874.

21. 720 F.2d 757, 764 (2d Cir.1983), *cert. denied*, 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984).

22. 761 F.2d 1313, 1317–19 (9th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985).

23. *See Haith v. United States*, 231 F.Supp. 495, 498 (E.D.Pa.1964), *aff'd per curiam*, 342 F.2d 158 (3d Cir.1965), 3 L. Orfield, *supra* note 1, at 180.

procedure followed in this case was entirely fair, subject to review by the district court, and permitted by the statute and Article III of the Constitution. We, therefore, join our sister circuits in approving the use of federal magistrates to preside over jury selection in civil and criminal cases.

## II.

The evidence, construed most favorably to the Government as it must now be, shows a scheme to swindle the United States that was bound eventually to be uncovered. In 1981, Ford and her then husband, Hilton, together with two others, conspired to obtain government property, ostensibly by purchasing it with checks drawn on accounts known by them to have insufficient funds, then to resell the property and pocket the proceeds without honoring the checks. Count I of the indictment, which charged a conspiracy to embezzle, steal, and purloin property of the United States, lists a number of overt acts. This is typical: On June 17, 1981, Lois E. Hilton Ford opened an account in a West Galveston, Texas, bank in the name of Ford Equipment Company, depositing $200. She thereafter made no further deposits. A month later, on July 15, she submitted a bid to the General Services Administration in the amount of $10,529.00 for four vehicles, which had previously been declared surplus property. Having been awarded the bid, Ford presented a check for $10,529.00 drawn on the recently established account. She or her husband then sold the vehicles without, of course, honoring the check.

Ford does not challenge the sufficiency of the evidence to support her convictions under Count 3, theft of government property,[24] and Count 5, aiding and abetting the theft of government property.[25] She does, however, challenge her conviction under

Count 4 of the indictment, which charges a violation of 18 U.S.C. § 1001. It states that Ford "covered up a material fact to the General Services Administration ... by representing that a check of the value of $10,529.00, for the purchase of four vehicles was covered by sufficient funds" in the bank on which the check was drawn "when, as she there knew, there was not sufficient funds in said account to cover such an amount of money." The proof at trial showed that Ford identified herself with her driver's license when she presented the check, but did not advise the General Services Administration that insufficient funds were on deposit to pay the check.

No evidence was adduced of any specific, affirmative representation by Ford at the time she presented the check to the Government. She argues, therefore, that, under the Supreme Court's reasoning in *Williams v. United States*,[26] there was insufficient evidence to support the allegation in Count 4 and that the jury should not have ruled on this charge. The Supreme Court decision in *Williams*, however, concerned a conviction under 18 U.S.C. § 1014, not § 1001, the statute invoked here. Section 1014 makes it a crime to "knowingly make any *false statement* ... for the purpose of influencing in any way the action of" certain federal agencies.[27] The Court in *Williams* construed the criminal statute strictly, stating that, "[a]lthough petitioner deposited several checks that were not supported by sufficient funds, that course of conduct did not involve the making of a 'false statement,' for a simple reason: technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as "true" or "false." [28]

The indictment in this case, however, does not allege a "false statement." Although § 1001 makes it a crime to make "any false, fictitious or fraudulent statements," the Government pursued its case

24. 18 U.S.C. § 641.

25. 18 U.S.C. § 2.

26. 458 U.S. 279, 284–90, 102 S.Ct. 3088, 3091–95, 73 L.Ed.2d 767 (1982).

27. 18 U.S.C. § 1014.

28. 458 U.S. at 284, 102 S.Ct. at 3091.

under another part of § 1001 that makes it a crime to *"knowingly and willfully . . . cover[ ] up by any trick, scheme or device a material fact."* 18 U.S.C. § 1014, the statute interpreted in *Williams,* does not have a similar provision.

The *Williams* Court declined to hold that a check constitutes, in effect, an implied representation to its receiver that funds sufficient to cover the check are in the account because it feared the "wider implications" of such a ruling. The Court reasoned that such an interpretation of "false statement," as used in § 1014, would mean that:

> any check, knowingly supported by insufficient funds, deposited in a federally insured bank could give rise to criminal liability, *whether or not the drawer had an intent to defraud. Under the Court of Appeals' approach, the violation of § 1014 is not the scheme to pass a number of bad checks; it is the presentation of one false statement—that is, one check that at the moment of deposit is not supported* by *sufficient funds—to a federally insured bank. . . .* Indeed, each individual count of the indictment in this case stated only that petitioner knowingly had deposited a single check that was supported by insufficient funds, *not that he had engaged in an extended scheme to obtain credit fraudulently.*[29]

The Court's attention to "scheme" and "intent to defraud" in this passage suggests that § 1001 covers just what § 1014, read strictly, does not reach. In *United States v. London,* we stated "that full effect must be given to the 'trick, scheme, or device' language of the first clause of § 1001,"[30] and added, "The mere omission of failing truthfully to disclose a material fact . . . does not make out an offense under the conceal or cover up clause of § 1001. Instead, the latter clause of § 1001 requires the government to prove

something more—that the material fact was affirmatively concealed by ruse or artifice, by scheme or device."[31]

The Government proved that requisite "something more" in this case. Ford did not merely give the Government a check knowing there were not funds sufficient to cover the amount in the account. She joined the other defendants in a scheme pursuant to which bank accounts were opened in the names of companies that existed only for the purpose of issuing checks, vehicles were purchased with checks drawn on these company accounts, and the defendants not only knew that the accounts had insufficient funds but had the intent not to honor the checks. These actions constitute a "trick, scheme, or device" to "cover up a material fact" to a government agency.[32] The conviction under Count 4 is, therefore, affirmed.

### III.

Ford also complains of a variance between the proof adduced at trial and the allegations under Count 5 of the indictment. The indictment alleged theft of property of the United States, described as a 1978 Dodge Pick-up vehicle having a of Vehicle Identification Number "D14AE8*15* 227389." The evidence at trial established that the vehicle taken was as described in the indictment, except that the Identification Number of the pickup was "D14AE8*S* 227389." Thus, the only variance of which Ford complains is the substitution of the numerals "15" in the charge for the letter "S" shown at trial.

■ A mere variance in proof that does not affect the substantial rights of the accused will not warrant setting aside a conviction.[33] If the allegation and proof "substantially correspond," the conviction

---

**29.** 458 U.S. at 286–87, 102 S.Ct. at 3092–93 (emphasis in original) (footnote omitted).

**30.** 550 F.2d 206, 213 (5th Cir.1977).

**31.** *Id.* at 214 (footnote omitted).

**32.** *See id.* at 213 & n. 6 (and cases discussed therein).

**33.** *See, e.g., United States v. Phillips,* 625 F.2d 543, 545–46 (5th Cir.1980).

is valid.[34] Here the type of vehicle described in the indictment was the same as proved by the evidence, and the difference in the two numbers can hardly be considered significant. Ford had adequate notice that she was charged with theft of the particular vehicle described.[35] As stated in *United States v. Cox,* "The validity of an indictment is governed by practical, not technical considerations. A conviction will not be reversed because of minor deficiencies which have not prejudiced the defendant."[36] Accordingly, we also affirm the conviction on Count 5.

For these reasons, we AFFIRM the judgment of the court below.

---

**34.** *Berger v. United States,* 295 U.S. 78, 83, 55 S.Ct. 629, 631, 79 L.Ed. 1314 (1935) (quoting *Washington & G.R. Co. v. Hickey,* 166 U.S. 521, 531, 17 S.Ct. 661, 665, 41 L.Ed. 1101 (1897)).

**35.** *Id.* 295 U.S. at 82, 55 S.Ct. at 630; *United States v. Davis,* 592 F.2d 1325, 1328 (5th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979).

**36.** 664 F.2d 257, 258 (11th Cir.1981).