NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 30 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

<table>
<tr><td>

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JESUS VEGA PEREZ,

        Defendant - Appellant.

</td><td>

No. 23-3891

D.C. No.
2:22-cr-00388-DWL-1

MEMORANDUM[*]

</td></tr>
</table>

Appeal from the United States District Court
for the District of Arizona
Dominic Lanza, District Judge, Presiding

Argued and Submitted March 24, 2025
Phoenix, Arizona

Before: BERZON and BENNETT, Circuit Judges, and TUNHEIM, District
Judge.[**]

    Jesus Vega Perez attempted to drive his mother's car, which was filled with

packages of methamphetamine, across the southern border and into the United

States. He was apprehended and charged with one count of possession with intent

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable John R. Tunheim, United States District Judge for the
District of Minnesota, sitting by designation.

to distribute methamphetamine, 21 U.S.C. § 841(a)(1), and one count of importation of methamphetamine, 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(1)(H). At trial, Vega Perez raised a duress defense. The jury found him guilty on both counts. He now appeals his conviction on three grounds. We affirm.

1. Vega Perez's challenge to one of the prosecution's comments during its opening statement ("Now the story now, nine months later, may be different") does not survive plain error review. The prosecutor's passing, non-specific comment did not "forc[e]" Vega Perez to "take the stand" and "explain any actual or possible behavior" that the prosecutor "br[ought] to the jury's attention." *United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987). The comment alluded vaguely to a potential discrepancy between the evidence the prosecution would adduce at trial and a possible defense; it did not tell the jury the nature of that defense or allude to facts rebutting it. Further, the comment was speculative—"may be different"—and did not indicate that the defendant himself would present any "story."

The prosecutor's comment also did not constitute impermissible vouching by suggesting to the jury that she possessed information outside the record that allowed her to uniquely assess Vega Perez's credibility. *See United States v. Shaw*, 829 F.2d 714, 717 (9th Cir. 1987). The prosecutor's comment did not refer to facts outside the record—no facts were mentioned. Nor was the statement, "fairly construed," based on the prosecutor's "personal knowledge apart from the

evidence" that would be adduced at trial. *United States v. Saunders*, 641 F.2d 659, 664 (9th Cir. 1980) (quoting *Orebo v. United States*, 293 F.2d 747, 749 (9th Cir. 1961)). To the contrary, the prosecutor said she was going to, and did, present to the jury at trial evidence which she summarized during her opening statement. For the same reasons, the prosecutor's comment did not violate, as Vega Perez contends, his "due process and fair trial rights not to be convicted but upon evidence introduced properly at trial."

2. Vega Perez's *Jewell* instruction challenge is also unavailing.

As an initial matter, we assume, without deciding, that Vega Perez's challenge to the *Jewell* instruction was not waived under the invited error doctrine. *See United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). As Vega Perez did not object to the instruction, we review for plain error. *United States v. Walter-Eze*, 869 F.3d 891, 911 (9th Cir. 2017).

"Under *Jewell*, the Government can satisfy the scienter requirement in a drug-trafficking case by showing that '[1] the defendant [was] aware' that it was 'highly probable' that he was dealing with a controlled substance but [2] he acted with 'a conscious purpose to avoid learning the truth.'" *United States v. Galecki*, 89 F.4th 713, 729 (9th Cir. 2023) (quoting *United States v. Jewell*, 532 F.2d 697, 704 (9th Cir. 1976) (en banc)). The government is "entitled to" a deliberate ignorance instruction under *Jewell* if, viewing the evidence in the light most

3

favorable to the requesting party, "the instruction is 'supported by law and has foundation in the evidence.'" *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) (quoting *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)).

The *Jewell* instruction is not incompatible with Vega Perez's duress defense. Though a coerced decision is not a deliberate one, *id.* at 920, Vega Perez's challenge to the instruction "presupposes that the jury believed" his duress defense; "[w]hile this would have been *a* rational course for the jury to take, it was not the only one," *id.* at 923. The government was "entitled . . . to have the jury instructed in conformity with each . . . rational possibilit[y]" supported by "all rational inferences the jury might draw from the evidence." *Id.*

The evidence in the record could support a *Jewell* instruction even though Vega Perez told agents during his post-arrest interview that he "knew drugs were in the vehicle." Vega Perez testified otherwise at trial. "Actual knowledge . . . is inconsistent with willful blindness." *Id.* at 922. But the government, again, may "present alternative factual theories" and is entitled to an instruction supported by all rational inferences the jury may draw. *Id.* at 923.

Finally, there was sufficient evidence that Vega Perez deliberately avoided the truth about the contents of his mother's car. Vega Perez testified that he was forced to drive his mother's car across the border by individuals affiliated with "organized crime" in Mexico. He explained that he had crossed into the U.S. two

4

years before and tried to buy a car for a particular Mexican criminal organization, but federal agents broke up the transaction and confiscated the purchasing funds from him. Vega Perez testified that he "assumed" the confiscated sum "was dirty money."

Vega Perez then testified that the same criminal organization coerced him into driving his mother's car across the border, as repayment for the confiscated money. He "exchanged cars" with them and "stayed at a restaurant while they worked on the car—I mean, they were putting stuff in the car." As Vega Perez had run into legal trouble when doing business with the same group in the past and knew that its members had "put[] stuff" in his mother's car, the jury could have reasonably inferred that if, as Vega Perez testified at trial, he did not actually know there were drugs in the car, then he deliberately avoided examining the car to see if it contained contraband. The district court did not err, much less plainly err, in delivering the *Jewell* instruction.

3. Vega Perez's vouching challenge to one of the prosecutor's comments during closing statement ("I would say to you first that the story that he told yesterday is not believable") also fails. This court "grant[s] a new trial for prosecutorial misconduct only where, considered in the context of the entire trial, the prosecutor's conduct seems likely to have affected the jury's discharge of its duty to judge the evidence fairly." *United States v. Sanchez*, 944 F.2d 497, 499 (9th

5

Cir. 1991).

The prosecutor's statement during closing was not impermissible vouching. The comment that the "story" Vega Perez "told yesterday is not believable" is well within the acceptable bounds of the prosecutor's latitude as a reasonable evidence-based inference: The remark conveys, using an objective standard, that Vega Perez's narrative is not "capable of being believed" as it is not "within the range" of "probability." Merriam-Webster Dictionary, Believable, https://www.merriam-webster.com/dictionary/believable (last visited March 31, 2025). And although the prefatory "I would say to you first that . . ." uses first-person language, the phrase is more akin to the preferred language "I submit" than "I think" or "I believe," because it serves to introduce the observation that comes after it, rather than convey the prosecutor's personal impression of the evidence. *See United States v. Weatherspoon*, 410 F.3d 1142, 1147 n.3 (9th Cir. 2005).

Moreover, placed in immediate context, the form and content of the statement would not "lead the jury to give [it] undue credit." *Id.* Just before uttering the contested sentence, the prosecutor highlighted the jury's factfinding role, saying, "The defendant is arguing that he acted out of duress that night. That is for you to decide." And immediately after the contested sentence, the prosecutor emphasized specific portions of Vega Perez's testimony that differed from the story he told on the night of his arrest. In context, the prosecutor's statement was a

request for the jury to draw reasonable inferences from the evidence, rather than an expression of her personal belief about Vega Perez's veracity.

Other contextual factors confirm that the prosecutor's statement does not warrant a new trial. The government's statement here did not "attack[]" Vega Perez's credibility to an extreme "extent" or frequency. *United States v. Necoechea*, 986 F.2d 1273, 1278 (9th Cir. 1993). And over the course of Vega Perez's multi-day, multi-witness trial, there was a volume of testimonial and video evidence that undercut Vega Perez's duress narrative, all supporting the statement that Vega Perez's testimony was "not believable." Further, the prosecutor emphasized just after making the contested comment that *even if* the jury believed Vega Perez's testimony, "it's still not sufficient to prove that he acted under duress based on the legal elements" because Vega Perez had a "reasonable opportunity to escape the threatened harm" by seeking refuge in the U.S.

Given the context and nature of the isolated statement and the volume of countervailing evidence, the prosecutor's isolated comment was not "likely to have affected the jury's discharge of its duty to judge the evidence fairly" in the "context of the entire trial." *Sanchez*, 944 F.2d at 499.

4. As Vega Perez's three challenges to his conviction are unsuccessful, we **AFFIRM** his conviction and the district court's denial of his motion for a new trial.