**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lois E. Hilton FORD,
Defendant-Appellant.**

No. 86–1098.

United States Court of Appeals,
Fifth Circuit.

Aug. 11, 1987.

Carmen W. Glazner and Danny D. Burns, Fort Worth, Tex., Court-appointed, for defendant-appellant.

Marvin Collins, U.S. Atty., J. Michael Worley, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and GEE, RUBIN, REAVLEY, POLITZ, RANDALL, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, HILL and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Today the government argues that Congress intended by the Federal Magistrates Act to grant to judges of United States District Courts authority to delegate to a magistrate as an "additional duty" the power to preside over the selection of the jury in felony cases. Given the grave constitutional questions such a construction would pose and the history and structure of the legislation creating the office of United States Magistrates, we are not persuaded of such congressional purpose.

We hold that the district court erred in allowing a magistrate to preside over jury selection. Neither the government nor the defendant objected to the substitution of the magistrate, however. Persuaded that the error was harmless beyond

reasonable doubt and that the trial was fundamentally fair, we affirm the conviction.

## I

### A

Lois Ford was convicted by a federal jury in Fort Worth, Texas, of stealing government property. The government proved that Ford and others bid for surplus vehicles offered for sale by General Services Administration and gave worthless checks in payment.

She appealed, attacking her conviction on three grounds. She argued that the district court erred in directing the magistrate to preside over jury selection, that the evidence was insufficient that any concealed facts were material, and that the trial proof varied from the indictment.

A panel of this court affirmed, rejecting all of Ford's contentions.[1] The panel found that the congressional grant to district judges of the power to give to magistrates additional duties, not inconsistent with other law or the Constitution, included the power to direct magistrates to preside over jury selection in felony cases; that such delegation violated no law and was constitutional.[2] We took the case en banc,[3] and today reinstate the panel opinion in all respects except its treatment of the role of the magistrate in jury selection.

### B

A United States Magistrate presided over the selection of the jury, which took some four hours despite the routine nature of the charges. The magistrate first summarized the indictment for the venire, introduced all counsel, and then personally interrogated each member of the venire. He gave a substantially complete jury charge, explaining the burden of proof in a criminal case, the presumption of innocence, the right of an accused not to testify, that statements and arguments of lawyers are not evidence, that objections of

lawyers are to be disregarded, the nature of circumstantial evidence including a metaphor about wet grass, the judging of witness credibility, that jurors were not to communicate with others about the case, and the sequence of proof in a criminal case. Finally, the magistrate charged the venire not to read about the case or undertake research on its own. At this juncture, he allowed counsel to question the panel, then set the number of peremptory challenges—twelve strikes to be exercised jointly.

The selection was not free of difficulty. Ms. Demerson, a member of the venire, expressed "mixed feelings." She explained, "[W]hen you said circumstantial evidence and things, my son was killed in October [an apparent robbery victim eleven months earlier], and the evidence that they gave me, it happened isn't clear in my mind, and I still have doubts about it.... [H]e was killed in process of robbery, and the answers that they gave me has been two different sets of answers...." When the prosecutor asked whether she could accept direct and circumstantial evidence, she replied, "I think I could." After some exchanges, the magistrate rejected a defense challenge for cause.

The magistrate seated the selected jurors with two alternates in the jury box and excused the rest of the venire. After again instructing the jury not to discuss the case, he explained when the district judge planned to start the trial and instructed them to report to the jury room on that day.

While the local rules of the Northern District of Texas provide that a magistrate can preside over jury selection "with consent of the parties and the District Judge,"[4] the rules make no explicit provision for review of any of the magistrate's rulings during voir dire, but provide generally that when reviewing non-dispositive rulings:

> No ruling of a magistrate in any matter which he is empowered to hear and deter-

---

1. *United States v. Ford,* 797 F.2d 1329, 1335 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 964, 93 L.Ed.2d 1011 (1987).

2. *Id.* at 1330–33.

3. *United States v. Ford,* 811 F.2d 268, 269 (5th Cir.1987).

4. N.D.Tex.R. 2(f)(5).

mine shall be reversed, vacated or modified on appeal unless the district judge shall determine that the findings of the magistrate are clearly erroneous, or that the magistrate's ruling is contrary to law or constitutes an abuse of discretion.[5]

Neither the government nor defense counsel either expressly consented or objected to the magistrate's presiding over jury selection. The district judge was not available until two days after the petit jury had been carved from the venire. There was no attempt to obtain review by the district judge of the magistrate's rulings and in particular his rejection of the defense challenge for cause of Ms. Demerson.

## II

The Magistrates Act of 1968 [6] abolished the system of United States Commissioners, replacing it with a system of United States Magistrates. The Act required that all magistrates be attorneys if possible, eliminated the "anachronistic fee system of compensation," gave magistrates a secure eight-year term, and expanded their jurisdiction.[7]

Section 636 of the Act, which defined magistrates' powers, empowered magistrates to try petty criminal offenses, generating considerable debate over whether magistrates could do so consistently with

article III.[8] Chief Justice Burger noted that the Judicial Conference of the United States objected to § 636 in its entirety, "fearing it so broad as to be subject to constitutional attack." [9] Throughout the debate, there was no suggestion that the Act authorized magistrates to conduct the trial of other than petty offenses. The implicit assumption was that magistrates presiding over the trial of felonies was not envisioned, to a certainty—despite the presence of the additional duty language now said to allow magistrates to preside over jury selection in felony cases.[10]

The Magistrates Act was not changed in any relevant way until 1976. In 1974, the Supreme Court held that magistrates could not conduct evidentiary hearings in a petition for federal habeas corpus filed by a state prisoner because it was "inconsistent with the ... laws of the United States" within the meaning of the Federal Magistrates Act.[11] More specifically, the court held that the Habeas Corpus Act as consolidated into 28 U.S.C. § 2243 required decisions by an article III judge. But the Court did not rest there, explaining, "We conclude further that [Local Rule 16] is to that extent invalid because, as we construe § 636(b), *that section itself precludes district judges* from assigning magistrates the duty of conducting evidentiary hearings." [12]

---

**5.** N.D.Tex.R. 4(b)(2).

**6.** 1968 U.S.Code Cong. & Admin.News 1280 (current version at 28 U.S.C. §§ 631–639).

**7.** H.R.Rep. No. 1629, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 4252, 4254.

**8.** *See, e.g., id., reprinted in* 1968 U.S.Code Cong. & Admin.News at 4266–70 (dissenting views of Mr. Cahill).

**9.** *Wingo v. Wedding,* 418 U.S. 461, 484, 94 S.Ct. 2842, 2855, 41 L.Ed.2d 879 (1974) (Burger, C.J., dissenting).

**10.** Section 636(b) of the 1968 Act provided:

Any district court of the United States, by the concurrence of a majority of all the judges of such district court, may establish rules pursuant to which any full-time United States magistrate, or, where there is no full-time magistrate reasonably available, any part-time magistrate specially designated by the court, may be assigned within the territorial jurisdiction of such court *such additional duties as*

are not inconsistent with the Constitution and laws of the United States (emphasis supplied).
The Act also provided that:
The additional duties authorized by rule may include, but are not restricted to—
(1) service as a special master in an appropriate civil action ...;
(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and
(3) preliminary review of application for posttrial relief.

28 U.S.C. § 636(b) (amended 1976).

**11.** *Wingo,* 418 U.S. at 472, 94 S.Ct. at 2849.

**12.** *Id.* (emphasis supplied). The Court looked to the legislative history and concluded that Congress did not intend in the 1968 Act that magistrates conduct evidentiary hearings. It rejected the suggestion that evidentiary hearings could be assigned under the language of additional duty.
It is then plain that "additional duty" has never been seen as a primary grant of power.

Two years later, Congress, in response to *Wingo,* amended the Magistrates Act to clarify that a magistrate

shall serve as an officer of the court in disposing of minor and petty criminal offenses, in the preliminary or pretrial processing of both criminal and civil cases, and in hearing dispositive motions and evidentiary hearings when assigned to the magistrate by a judge of the court.[13]

This 1976 amendment revised the magistrates' powers into four parts,[14] providing in the first that a judge can designate a magistrate "to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, [and] to suppress evidence in a criminal case...."[15] Significantly, Congress provided that a judge may reconsider the matters referred under this grant "where it has been shown that the magistrate's order is clearly erroneous or contrary to law."[16]

In this new first part, Congress also allowed district judges to designate magistrates "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations ... for any motion."[17] Finally it detailed a system by which "[a] judge of the court shall make a de novo determination of those portions of the [magistrate's] report ... to which objection is made."[18]

In the second part, Congress gave to district judges the power to appoint a special master to serve in civil cases upon consent of the parties.[19]

---

As we explain, Congress responded to *Wingo* by *adding* a new section. It did not change the additional duty language.

**13.** H.R.Rep. No. 1609, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin. News 6162, 6165.

**14.** Section 636(b) provides:

(1) Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

(2) A judge may designate a magistrate to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

(3) A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

(4) Each district court shall establish rules pursuant to which the magistrates shall discharge their duties.

**15.** 28 U.S.C. § 636(b)(1)(A).

**16.** *Id.*

**17.** 28 U.S.C. § 636(b)(1)(B).

**18.** 28 U.S.C. § 636(b)(1).

**19.** 28 U.S.C. § 636(b)(2).

Congress retained the additional duty provision from the Magistrates Act of 1968 as the third part without relevant change in language and without mentioning either the mechanics or the standard for review by a judge of any additional duty assigned to a magistrate.[20] Intending that courts be innovative in their use of magistrates, Congress suggested that "district courts would remain free to experiment in the assignment of other duties to magistrates which may not necessarily be included in the broad category of 'pretrial matters.'"[21] However, this legislative entreaty was in a quest for "increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties."[22]

Finally, Congress in the fourth part detailed for the first time procedures and circumstances under which magistrates could, with the consent of the parties, try civil cases.[23]

### III

In its consideration of the Magistrates Act of 1968 and its amendment in 1976, Congress was wary of the strictures of article III and the demands of due process. That sensitivity proved to be well-founded. The 1976 amendment granting district judges the power to delegate to magistrates the determination of dispositive motions, such as motions to suppress, was promptly challenged, reaching the Supreme Court in 1980.[24] Congress had carefully provided for de novo determination by district judges of proposed rulings on dispositive motions, convinced that this superintendence resolved any article III concerns. A divided court in *Raddatz* agreed. Three justices dissented, with Justices Blackmun and Powell writing special concurrences.

The dividing issue was whether judicial superintendence essential to article III placement of judicial power required that a district judge hear the evidence anew when a challenged ruling on a dispositive motion turned on credibility findings. Four justices thought such review essential. In any event, there was no disagreement that congressional concern over the limiting force of article III prompted the detailing of review procedures for pretrial dispositive motions in criminal cases.

The *Raddatz* majority responded to the observation that such pretrial decisions can be just as determinative as many trial rulings by emphasizing the difference between pretrial and trial proceedings. In distinguishing pretrial from trial matters the *Raddatz* majority observed that the "Court on other occasions has noted that the interests at stake in a suppression hearing are of a lesser magnitude than those in criminal trial itself"[25] and pointed out that "[a] defendant who has not prevailed at the suppression hearing remains free to present evidence and argue to—and may persuade—the jury that the confession was not reliable and therefore should be disregarded."[26] Justice Marshall, with whom Justice Brennan joined, urged that the Act would violate article III and deny due process unless construed to require that an article III judge hear the testimony anew when credibility was at issue.[27] Justice Powell agreed that, in such circumstances, due process would require a fresh hearing.[28] Finally, Justice Stewart, joined by Justices Marshall and Brennan, read the Act to require a fresh hearing.[29]

*Raddatz* furnishes two relevant insights. First, if Congress intended that magistrates could be assigned the additional duty

---

20. 28 U.S.C. § 636(b)(3).

21. H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. & Admin. News 6162, 6172.

22. *Id.*

23. 28 U.S.C. § 636(c).

24. *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

25. *Id.* at 679, 100 S.Ct. at 2414.

26. *Id.* at 678, 100 S.Ct. at 2413–14 (footnote omitted).

27. *Id.* at 694–95, 100 S.Ct. at 2422 (Marshall, J., dissenting).

28. *Id.* at 686, 100 S.Ct. at 2418 (Powell, J., concurring in part and dissenting in part).

29. *Id.* at 692, 100 S.Ct. at 2420 (Stewart, J., dissenting).

of presiding over the trial of felony cases, the struggle over petty offenses in the 1968 Act and the concerns over pretrial ruling authority, explicitly provided for, would make no sense. Similarly, if the Court believed that to be the intent of Congress, the *Raddatz* majority's effort to distinguish pretrial and trial would be superfluous.

We need not decide whether Congress has the power to allow a district judge to delegate the trial of felony cases to a magistrate. It is sufficient here to simply observe that such a construction would pose grave constitutional issues.[30] We are obligated, of course, to read statutes to avoid constitutional difficulty. Relatedly, we insist upon clear congressional expression when the reach of claimed reading provokes issues regarding constitutionally mandated spheres of governmental power. For example, "[T]he Court consistently has required an unequivocal expression that Congress intended to override Eleventh Amendment immunity...."[31] In short, we do not lightly engage such fundamental issues, but rather we properly avoid them when we may fairly do so. We are then not persuaded that Congress intended to grant to district judges the power to delegate the trial of felony cases themselves.

### IV

But of course the defense of a magistrate presiding over jury selection does not rest on the assertion that an additional duty could include presiding over trial of felonies. Rather, it is suggested that jury selection is sufficiently preliminary to the "trial" of a criminal case to escape constitutional concerns and difficulties of statutory construction attending the assertion that an additional duty may include presiding over the trial itself. We reject this effort to separate jury selection and trial for two reasons.

First, we see the selection of the jury as an essential component of the trial itself "because the impartiality of the adjudicator goes to the very integrity of the legal system."[32] Second, even if viewed as a pretrial matter, the difficulties of review by an article III judge of a magistrate's rulings in jury selection—and the absence of a statutory procedure for that review in the face of explicit review procedures for other pretrial matters—leaves us unconvinced that Congress intended to allow delegation of this important task.

The selection of a petit jury from a venire is an important part of trial. At common law only the judge could preside over jury selection in felony cases.[33] Its tie to trial is also illustrated by consistent judicial insistence upon its fairness as a component of trial. The Supreme Court has noted the "long and widely held belief that peremptory challenge is a necessary part of trial by jury."[34] Only this past term the Court has attempted to free the selection process of racial bias by prescribing a process for claims that the prosecutor is using peremptory challenges to exclude racial minorities.[35] Such concern plainly rejects the view that jury selection is a preliminary and essentially ministerial act. At the least it is an essential instrument to the delivery of a defendant's constitutionally secured right to a jury trial rooted in the commands of due process, if not the trial guarantees of the sixth amendment and section 2 of article III themselves.

---

**30.** *See generally Geras v. Lafayette Display Fixtures,* 742 F.2d 1037, 1045 (7th Cir.1984) (Posner, J., dissenting); *see also* Comment, *The Boundaries of Article III: Delegation of Final Decisionmaking Authority to Magistrates,* 52 U.Chi.L.Rev. 1032 (1985); Comment, *Is the Federal Magistrate Act Constitutional After Northern Pipeline?* 1985 Ariz.St.L.J. 189.

**31.** *Welch v. State Dep't of Highways & Pub. Transp.,* — U.S. —, —, 107 S.Ct. 2941, 2948, 97 L.Ed.2d 389 (1987) (citation omitted).

**32.** *Gray v. Mississippi,* — U.S. —, —, 107 S.Ct. 2045, 2056, 95 L.Ed.2d 622 (1987).

**33.** 4 William Blackstone, Commentaries *353.

**34.** *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965).

**35.** *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *see also* H.R. Rep. No. 1076, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 1792 (discussing the Jury Selection and Service Act of 1968).

At some point the accusatory process shifts from a fact-gathering and charging phase to its primary task of deciding guilt. It is suggested that this ought to be a floating point that adjusts to the issue. This suggestion gathers strength from the circumstance that double jeopardy does not attach until the jury is sworn. But all other trial protections are in force when jury selection begins. For example jury selection is a part of the trial for purposes of the Speedy Trial Act.[36] The rights of the accused to be present, of confrontation, of counsel, and of public proceedings do not await the swearing of the petit jury, but are all enjoyed at the jury selection stage. That defendants enjoy such rights during jury selection ought not be surprising. "Due process implies a tribunal both impartial and mentally competent to afford a hearing," [37] "a jury capable and willing to decide the case solely on the evidence before it." [38]

That double jeopardy does not attach until a jury is sworn does not suggest that the selection of the petit jury is preliminary. The jeopardy line is an accommodation of the government's prosecutorial discretion and fact-gathering power and the defendant's right to be free of double jeopardy. The line represents "the broad perception that the Government's action has reached the point where its power to retrace its steps must be checked by the 'countervailing interests of the individual protected by the double jeopardy clause of the fifth amendment.'" [39]

In *Press-Enterprise*, the Court unanimously rejected the argument that jury selection is sufficiently preliminary and divorced from the trial's search for truth that it need not be open. The Court explained that "[t]he process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system." [40] The Court traced the history of jury selection noting its open character, from trials as early as the Norman Conquest. Of course, *Press-Enterprise* was an explication of first amendment rights. But our point is that jury selection is and has been regarded as a critical part of trial; that the line between preliminary and trial issues is not etched in one place for all purposes does not suggest otherwise.

Second, if seen as a preliminary matter, the superintendence by an article III judge of the magistrate's handling of jury selection would be difficult at best. While the *Raddatz* majority did not insist that a district judge personally hear disputed testimony, it did insist an article III judge have the right of de novo review—plenary power to reject findings and insist on a new evidentiary hearing. But, surely such power must be real and not illusory. Review of a trial judge's rulings on challenges to veniremen is difficult at best, as illustrated by our experience in administering the standards of *Witherspoon v. Illinois.* [41] *Witherspoon* set the measure for veniremen's views regarding the death penalty in capital cases. The lower courts, including this court, read *Witherspoon* to require de novo review of a state trial judge's rulings on challenges made in the course of jury selection. This proved to be a difficult task.[42]

In *Wainwright v. Witt,* [43] the Court rejected the de novo standard in favor of the presumption of correctness standard of 28 U.S.C. § 2254(d) (fairly supported by the

---

**36.** 18 U.S.C. §§ 3161–3174.

**37.** *Jordan v. Massachusetts,* 225 U.S. 167, 176, 32 S.Ct. 651, 652, 56 L.Ed. 1038 (1912).

**38.** *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).

**39.** *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 509 n. 8, 104 S.Ct. 819, 823 n. 8, 78 L.Ed.2d 629 (1984) (quoting *United States v. Velazquez,* 490 F.2d 29, 34 (2d Cir.1973)); *see also Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).

**40.** *Id.* at 505, 104 S.Ct. at 821.

**41.** 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

**42.** *See, e.g., O'Bryan v. Estelle,* 714 F.2d 365 (5th Cir.1983), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

**43.** 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). "[T]he *Witherspoon-Witt* standard is rooted in the constitutional right to an impartial jury...." *Gray v. Mississippi,* —— U.S. at ——, 107 S.Ct. at 2056.

record). The Court noted the difficulties of such a de novo standard, concluding that "deference must be paid to the trial judge who sees and hears the juror."[44] It pointed to *Reynolds v. United States,*[45] in which the Court observed:

[T]he manner of the juror while testifying is often times more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case.[46]

The *Wainwright* court also rejected the suggestion that a trial judge must make explicit findings in ruling on challenges for cause, recognizing the unique importance of sight and sound in the nigh intuitive judgments of a trial judge's rulings in the course of voir dire.[47] Squaring this difficulty with *Raddatz*'s insistence upon superintendence by an article III judge poses problems. An effort to engage in de novo *review* would be difficult and often impossible. Of course, we might conclude that a district court has the inherent power simply to conduct the voir dire a second time. But putting aside that such duplicative effort frustrates the very efficiency claims made in its support, such a power also faces serious practical problems in jury selection. The second voir dire or rehearing of testimony may never capture the original scene, and carrying a challenged venireman to a second interrogation before the district judge would be a delicate exercise at best.[48] Unlike dispositive pretrial motions, there is no opportunity to convince the jury afresh at trial.

This absence of statutorily-prescribed review gains no comfort by finding inherent power to review by a constitutionally adequate standard, because such a savings exercise fails to respond to the inquiry into congressional purpose—a purpose illuminated by the failure of Congress to detail a standard or process for review despite the demonstrated view of its importance. The relevant point is we ought not lightly attribute to Congress the purpose to enter this thicket with *no* provision for review, whether or not these practical problems might be surmounted.

## V

Three circuits have decided cases in which a magistrate presided over voir dire, but have disposed of the issue on the parties' failure to object. Only the Ninth Circuit has upheld the magistrate's presiding over voir dire on grounds of adequate article III control and efficiency.

In *Haith v. United States,*[49] the Third Circuit held that the judge's absence from the courtroom during jury selection in a criminal case was not error because the parties failed to object and because the defendant alleged no prejudice from the judge's absence.[50] The court reached its holding despite the absence of a stenographic record of voir dire to allow review.

The First Circuit in *United States v. Rivera-Sola,*[51] upheld a magistrate's presiding over voir dire, jury selection and preliminary instructions because the defendant failed to object. In dicta the court added, "We think that a magistrate can effectively conduct the voir dire and preside at the selection of juries in civil and criminal cases...."[52] Interestingly, the court indicated that preliminary instructions were an important part of the trial and should be handled by the judge, presumably on the assumption that instructions are not important to voir dire[53]—an

44. *Wainwright,* 105 S.Ct. at 853.

45. 98 U.S.(8 Otto) 145 (1879).

46. *Wainwright,* 105 S.Ct. at 854 n. 9 (quoting *Reynolds,* 98 U.S.(8 Otto) at 156–57).

47. *Id.,* 105 S.Ct. at 855.

48. "[T]he nature of the jury selection process defies any attempt to establish that an erroneous *Witherspoon-Witt* exclusion of a juror is harmless." *Gray v. Mississippi,* — U.S. at —, 107 S.Ct. at 2055.

49. 342 F.2d 158 (3d Cir.1965) (per curiam).

50. *Id.* at 159.

51. 713 F.2d 866 (1st Cir.1983).

52. *Id.* at 874.

53. *Id.*

assumption belied by the events of this case in which Ms. Demerson's views were exposed by the instruction on circumstantial evidence.

The Second Circuit in *United States v. DeFiore,* [54] also upheld a magistrate's presiding over voir dire because the defendant failed to make a contemporaneous objection to the action, thus waiving his claim to an article III court for jury selection.

The Ninth Circuit in two cases has addressed the validity of a magistrate's presiding over voir dire. In *United States v. Bezold,* [55] the court upheld the magistrate's actions even though the defendant in the criminal case timely objected. The decision found review and control in the district court adequate because (a) the judge could receive the transcript of voir dire, (b) the judge could observe the panel at trial, and (c) the judge had wide discretion to disqualify jurors after the trial began.[56] Lacking evidence of actual prejudice, the court affirmed the conviction.

In *United States v. Peacock,* [57] the Ninth Circuit upheld the delegation of jury selection to a magistrate under § 636(b)(3), imported a requirement of de novo review to avoid constitutional problems, and implicitly said that the conduct of voir dire is not an inherently judicial function even though it constitutes a "significant element of a criminal trial." [58] Finally, the court noted that the procedure may promote more rapid and efficient jury selection.[59]

None of these decisions faced the necessity of treating voir dire as a preliminary rather than as a part of trial; and significantly, none explained the necessity of the balance of the 1976 amendment if "additional duty" could carry its now claimed power. Moreover, none of the decisions expressed serious concern over the constitutionality of such acts. With respect, we see voir dire in a different light—of greater importance. The trial lawyer knows that

who decides the truth from the evidence may be as important as the evidence. The process of selecting the persons to hear the evidence inevitably introduces the trial players to the jury and itself triggers the decisional process. We have secured the rights to the selection process as an essential part of trial by jury and struggled to eliminate bias in its function.

It is then difficult to view jury selection as fit for delegation to magistrates as part of a congressional effort to free judges for performance of their "traditional adjudicatory duty." Rather, we see jury selection as such an integral component of trial that we are not persuaded that Congress envisioned its delegation to magistrates.

It is suggested that the sole limit of the congressional grant, by the additional duty section, of the power to delegate is that the delegation not violate another law or the Constitution. But as we have explained, such a broad reading of congressional purpose would render superfluous the balance of the statute. By that reading, the additional duty language was all that was necessary. Fairly read in context, Congress never intended that this language swallow all that preceded it. Additional duty is a residuum, granting the power to delegate any task not otherwise forbidden after we carve away that congery of duties that Congress never envisioned would be delegated. We are not persuaded that Congress intended to grant authority to judges to delegate to magistrates the authority to preside over felony trials and over activities integral to and intimately tied with trial.

Simply put, whatever the power of Congress may be, we are not persuaded that Congress intended that "additional duty" include presiding over jury selection in felony cases. The district court erred in allowing the magistrate to preside over the selection of the jury. But because Lois Ford

**54.** 720 F.2d 757, 765 (2d Cir.1983), *cert. denied,* 466 U.S. 906, 104 S.Ct. 1684, 80 L.Ed.2d 158 (1984).

**55.** 760 F.2d 999 (9th Cir.1985), *cert. denied,* 474 U.S. 1063, 106 S.Ct. 811, 88 L.Ed.2d 786 (1986).

**56.** *Id.* at 1002.

**57.** 761 F.2d 1313 (9th Cir.), *cert. denied,* 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985).

**58.** *Id.* at 1317–19.

**59.** *Id.* at 1319.

did not object and because the trial was fundamentally fair, we AFFIRM.[60]

**E. GRADY JOLLY, Circuit Judge, concurring in result:**

I cannot fully agree with either the majority or the dissent. I do not agree with the majority's conclusion that the conduct of voir dire at a criminal trial by a magistrate offends the Magistrates Act, nor do I share the majority's concern that it presents Article III Constitutional concerns. On the other hand, I do not agree with the dissent that a magistrate may conduct voir dire at a criminal trial over the objection of the defendant. Thus, I would hold that the conduct of voir dire by a magistrate does not *per se* offend either the Magistrates Act or Article III of the Constitution, and because the defendant did not object, the practice in this case did not violate the defendant's fifth and sixth amendment rights.

For purposes of our decision today, it seems to me that the words of Article III of the Constitution are simple and clear: the judicial power of the United States is vested in courts whose members have life tenure. That power is vested in those judges when magistrates are subject to the full supervision and control of those judges. Although I agree with the majority that actions of magistrates must be subject to effective review by district judges, I do not agree with the majority that the conduct of voir dire by magistrates cannot, in all cases *per se*, be effectively reviewed by a district judge. As the dissent points out, review of the voir dire process does present certain problems, sometimes unique, but these problems are not, in the vast majority of the cases, insurmountable. The majority's solution, a *per se* rule against the conduct of voir dire by magistrates, is a much too stringent solution that deprives the district courts of some helpful flexibility in the utilization of magistrates.

It is unnecessary to remind anyone that the court system structured in Article III of the Constitution is presently overburdened in our twentieth century litigious society. No one disagrees, I would think, with the proposition that the courts, like the other branches of government, must be adept at responding to current circumstances. Thus, in enacting the Federal Magistrates Act, Congress sought to provide assistance to the busy district courts through the use of magistrates, and urged the courts to be innovative in the use of magistrates as a means of meeting modern challenges. The Magistrates Act was not designed to afford rigid protection to the prerogatives of federal judges against encroachment by judicial adjuncts who are subject to the judges' full supervision. That much being clear, however, I would quickly emphasize that Congress certainly did not intend to dilute the procedural protection afforded defendants in criminal trials in federal courts.

I therefore do not dismiss even for a minute the force of Judge Higginbotham's opinion as it demonstrates the determinant role that voir dire sometimes plays in the ultimate outcome of a defendant's quest for justice. Unlike the majority, however, I view this matter as a concern, not of Article III, but of the fifth and sixth amendments' protection of due process and an impartial jury. In other words, this concern implicates rights that belong to the defendant and not to the courts. Article III concerns, as I have indicated earlier, are satisfied by the availability of review by a district judge. The individual defendant's viewpoint is quite different. He may insist that the court provide him with the maximum amount of procedural protection to which he is constitutionally entitled. A defendant, however, may decide that his rights are fully protected at voir dire by a magistrate and may, for whatever valid reasons, consent to a magistrate's presiding over voir dire. Obviously, if the defendant consents, he has received the procedural and constitutional protection to which he is entitled.

---

**60.** Our conclusion that this trial was not fundamentally unfair despite the error is not a suggestion that, with consent of the parties, there is no error. Trusting that district judges will abide this decision, we have no occasion to exercise our supervisory jurisdiction to prevent repetition.

Finally, I do not dismiss the concerns expressed by the majority that sometimes critical deficiencies in review of voir dire may present Article III concerns. When considered, however, in relation to the thousands of cases that are tried each year, such problems are likely very few. Nevertheless, it might be appropriate and wise for federal courts, in their supervisory capacity, to enact rules curtailing, or even precluding the use of magistrates at voir dire in certain situations. Such infrequent cases, however, are not convincing reasons that the practice followed by the district court in this case was in violation of the Magistrates Act or the Constitution. I therefore concur in the result reached by the majority.

RUBIN, Circuit Judge, with whom REAVLEY, JOHNSON, and WILLIAMS, Circuit Judges, join dissenting:

The Magistrates Act authorizes district courts to delegate to magistrates "such additional duties as are not inconsistent with the Constitution and laws of the United States."[1] The majority opinion holds that Congress did not mean what it so plainly said, despite legislative history confirming that Congress indeed said what it intended. Allowing a magistrate to conduct voir dire is not contrary to any law of the United States, and the majority does not state that it is. The opinion states only, without deciding, that such a delegation under the direct supervision of the district judge *might* violate the constitutional guarantee of a jury trial in criminal cases and, therefore, that the statute should be construed to prohibit such a delegation. I differ both with this statutory interpretation and with the implicit constitutional construction, and I therefore respectfully dissent.

## I.

The factual situation giving rise to this appeal is a common occurrence. Trial of two defendants was scheduled to begin, and a venire had been summoned. Judge David Belew, Jr., to whom the case was assigned, was still engaged in the trial of another case. Instead of recessing the tri-

al in progress or sending the venire home, he orally requested Magistrate Alex McGlinchey to conduct jury selection. The magistrate introduced himself to the venire, explained the case, and conducted the first part of the voir dire. He then allowed counsel for each side to address the members of the venire and to ask them questions. He advised the two defendants, each of whom had different counsel, that they might each have ten peremptory challenges or, if they wished to exercise their challenges jointly, they might have twelve challenges. The defendants chose to exercise their challenges jointly. They made two challenges for cause. The government offered no objection to these challenges, and the magistrate allowed one and denied one. The parties then exercised their peremptory challenges, after which the magistrate excused the jury and instructed them to return two days later for trial.

The magistrate specifically instructed the defendants to notify the district judge of any matters he needed to consider in the two days between voir dire and the swearing of the jury. Nothing, however, was called to the district judge's attention. When the jury thus selected reported for trial, none of the parties raised any question concerning either the eligibility or qualifications of any juror, the procedure the magistrate had followed, or the comments he had made to the venire. In the presence of the judge and of all parties, the clerk—not the judge—administered the oath to the jury, and the trial began. I use the latter words advisedly: Both in common vernacular and for the purpose we are now considering, that is when the trial began.

## II.

Fed.R.Crim.P. 24 states, "The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or *may* itself conduct the examination." Although the prevailing practice in many federal district courts is for the trial judge to preside over the selection of a jury, the Rules do not require it. Professor Orfield,

1. 28 U.S.C. § 636(b)(3) (1982).

in his treatise *Criminal Procedure Under the Federal Rules*, states, "[N]either Rule 24(a) nor the principles of due process require the presence of the trial judge during the selection of a jury, and, as a general rule, the right to have the judge present during the selection of the jury may be waived."[2]

A House Report on the 1976 amendments to § 636 of the Magistrates Act stated:

> Under this subsection, the district courts would remain free to experiment in the assignment of *other duties* to magistrates *which may not necessarily be included in the broad category of "pretrial matters"* ....
>
> If the district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties, and a consequent benefit to both efficiency and the quality of justice in the Federal courts.[3]

Senator Joseph Tydings, the Senate sponsor of the original Federal Magistrates Act, testified in the House hearings:

> The Magistrate[s] Act specifies ... three areas [explicitly] because they came up in our hearings and we thought they were areas in which the district courts might be able to benefit from the magistrate's services. *We did not limit the courts to the areas mentioned....*
>
> *We hope and think that innovative, imaginative judges who want to clean up their caseload backlog will utilize the U.S. magistrates in these areas and perhaps even come up with new areas to increase the efficiency of their courts.*"[4]

As the Seventh Circuit stated in *In re Establishment Inspection of Gilbert & Bennett Manufacturing Co.*,[5] "The only limitations on section 636(b)(3) are that the duties be consistent with the Constitution and federal laws and that they not be specifically excluded by section 636(b)(1)."

Every other circuit that has considered this question has held that § 636(b)(3) allows a judge to delegate to a magistrate, as an "additional duty" within the meaning of this section, the quasi-judicial duty of presiding over voir dire. In *United States v. Rivera-Sola*,[6] the First Circuit held that, by failing to object to a magistrate's conduct of voir dire, the defendant had waived his right to do so. But because this appeared to be a regular practice in the District Court of Puerto Rico, the court reviewed the procedure and, in a lengthy comment, approved.[7] In *United States v. DeFiore*,[8] the Second Circuit reached the same result, relying on the defendant's failure to object to the use of the magistrate. In *United States v. Peacock*[9] and *United States v. Bezold*,[10] the Ninth Circuit considered cases in which the defendant *had* timely objected, and found that § 636(b)(3) does authorize the conduct of voir dire by a magistrate. That court relied on the legislative history of the Act and the listing of voir dire as an "additional duty" in the Legal Manual for United States Magistrates.[11]

---

**2.** 3 L. Orfield, *Criminal Procedure Under the Federal Rules* § 24.65, at 180 (1966).

**3.** H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6162, 6172 (emphasis added).

**4.** Hearings on the Federal Magistrates Act before Subcommittee No. 4 of the House Committee on the Judiciary, 90th Cong., 2d Sess. 81 (1968) (emphasis added).

**5.** 589 F.2d 1335, 1340–41 (7th Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979).

**6.** 713 F.2d 866 (1st Cir.1983).

**7.** *Id.* at 872–73.

**8.** 720 F.2d 757, 764–65 (2d Cir.1983), *cert. denied*, 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984).

**9.** 761 F.2d 1313, 1317–19 (9th Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985).

**10.** 760 F.2d 999, 1001–03 (9th Cir.1985), *cert. denied*, 474 U.S. 1063, 106 S.Ct. 811, 88 L.Ed.2d 786 (1986).

**11.** Administrative Office of the United States Courts, *Legal Manual for United States Magistrates* § 3.10(3).

Circuit courts have also approved the delegation to magistrates of other duties not expressly enumerated in § 636. In *Mathews v. Weber*, [12] the Supreme Court upheld the referral to magistrates of all actions to review administrative determinations regarding entitlement to Social Security benefits. And this circuit, in *United States v. Boswell*, [13] permitted a magistrate to preside over four hours of closing argument when the trial judge became ill. There is no reason to read the statute as forbidding a similar delegation of the conduct of voir dire to magistrates, provided, as the legislative history indicates, that the delegation does not offend the Constitution.

In *United States v. Raddatz*, [14] moreover, the Supreme Court was unanimous in finding that § 636 grants to judges the authority to delegate the holding of suppression hearings in criminal cases to magistrates. The Court in *Raddatz* was divided only on the issue of the constitutionality of this delegation absent a *de novo* hearing by the trial judge.

### III.

The real issue before us, then, is whether the delegation to a magistrate of the conduct of voir dire, subject to review by the district court, violates the Constitution. The majority first demolishes a straw man: It would (or *might*) be unconstitutional to delegate to a magistrate the *trial* of felony cases. That is not the issue. The sole question before us is the constitutionality of delegating to an officer appointed by the court with express statutory authority, who is working under the direct supervision of a district judge, the duty of conducting voir dire. The majority opinion

holds that presiding over voir dire is so inherently a part of trial that it must be done by a district judge in person. I do not agree with this sanctification of the voir dire process.

Whether the magistrate in this case gave the venire what might be considered a preliminary charge is irrelevant to the constitutionality of delegating to such a court officer the power of presiding at the preliminary stage of jury selection. What is significant is that the magistrate acts as an aide to the district judge under the judge's immediate supervision and control, and that all of the magistrate's actions are subject to *de novo* review.

In *Peacock* and *Bezold*, the Ninth Circuit held that selection of jurors by a magistrate does not offend Article III of the Constitution. No other circuit has expressly ruled on the constitutionality of such a delegation, although the First Circuit did state in dicta in *Rivera-Sola* that it would permit magistrates to conduct voir dire even if the defendant objected. Rulings by the Second [15] and Third [16] Circuits, that the parties may by silence waive their right to object to voir dire by a magistrate, at least imply that voir dire by a magistrate does not violate the Constitution, for waiver of a constitutional right designed to protect the fairness of trial must be knowing, express, and intelligent.[17]

The constitutionality of this delegation does not depend on finding "a floating point that adjusts to the issue," as the majority describes it. We nevertheless note the Supreme Court's statement, in *Press-Enterprise Co. v. Superior Court*, [18] that the point at which a trial begins does indeed vary as a function of the right at issue.[19] Thus, although, for purposes of

---

**12.** 423 U.S. 261, 266–72, 96 S.Ct. 549, 552–55, 46 L.Ed.2d 483 (1976).

**13.** 565 F.2d 1338, 1341–42 (5th Cir.), *cert. denied*, 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 110 (1978).

**14.** 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

**15.** *United States v. DeFiore*, 720 F.2d 757, 764–65 (2d Cir.1983), *cert. denied*, 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984).

**16.** *Haith v. United States*, 342 F.2d 158, 159 (3d Cir.1965), *aff'g per curiam* 231 F.Supp. 495 (E.D. Pa.1964); *Stirone v. United States*, 341 F.2d 253, 255–56 (3d Cir.), *cert. denied*, 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965).

**17.** *See Schneckloth v. Bustamonte*, 412 U.S. 218, 235–40, 93 S.Ct. 2041, 2052–55, 36 L.Ed.2d 854 (1973).

**18.** 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).

**19.** *Id.* at 509 n. 8, 516, 104 S.Ct. at 823 n. 8, 827.

double jeopardy, a trial begins when the first witness is sworn, it begins earlier for purposes of the public's first amendment right to attend criminal trials. We must apply the same reasoning in the case before us: The fact that voir dire may be treated as part of a trial for some purposes is not controlling.

Voir dire is an important stage in a felony trial, as it is in any jury trial, but it is not for this reason so "inherently judicial" that no part of it may be delegated to a magistrate. Comparing voir dire to other parts of a felony trial, certainly an evidentiary hearing on a motion to suppress evidence is at least as important; for it may determine the result. Yet, in *United States v. Raddatz*, the Supreme Court approved a magistrate's conduct of an evidentiary hearing on a motion to suppress evidence, as authorized by § 636(b)(1)(B) of the Magistrates Act.

The Court in *Raddatz* first held that the language of the Act does not require the district court to rehear the testimony on which the magistrate based his findings. "[T]he statute calls for a *de novo* determination, not a *de novo* hearing." [20] Turning to the constitutional issues, the Court next found that the Act does not violate the Due Process Clause because it requires the district court to make a *de novo* determination of any disputed portion of the magistrate's proposed findings and recommendations. The Court stated, "Of course, the resolution of a suppression motion can and often does determine the outcome of the case; this may be true of various pretrial motions." [21] However, "the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself." [22]

Turning then to the question whether this delegation violates Article III, the Court stated:

> In passing the 1976 amendments to the Federal Magistrates Act, Congress was alert to Art. III values concerning the vesting of decisionmaking power in magistrates. Accordingly, Congress made clear that the district court has plenary discretion whether to authorize a magistrate to hold an evidentiary hearing and that the magistrate acts subsidiary to and only in aid of the district court. Thereafter, the entire process takes place under the district court's total control and jurisdiction. [23]

The Court concluded:

> Thus, although the statute permits the district court to give to the magistrate's proposed findings of fact and recommendations "such weight as [their] merit commands and the sound discretion of the judge warrants," *Mathews v. Weber, supra*, 423 U.S., at 275, 96 S.Ct., at 556, that delegation does not violate Art. III so long as the ultimate decision is made by the district court. [24]

The majority seeks to distinguish *Raddatz* on the basis that suppression hearings are not so inherent a part of trial as voir dire. Certainly suppression hearings are even more likely to be outcome determinative. The defendant has the same right to a public proceeding [25] and to the assistance of counsel. [26] And the government is even permitted to lodge an interlocutory appeal if the hearing results in suppression. [27] Other parts of a criminal trial, moreover, are performed outside the judge's presence. Fed.R.Crim.P. 15, for example, permits a deposition to be taken before another official and later to be offered in evi-

**20.** *Id.* at 674, 100 S.Ct. at 2411.

**21.** *Id.* at 677–78, 100 S.Ct. at 2413.

**22.** *Id.* at 679, 100 S.Ct. at 2414.

**23.** *Id.* at 681, 100 S.Ct. at 2415 (footnote omitted).

**24.** *Id.* at 683, 100 S.Ct. at 2416.

**25.** *See Waller v. Georgia,* 467 U.S. 39, 45–47, 104 S.Ct. 2210, 2214–16, 81 L.Ed.2d 31 (1984); *Gannett Co. v. DePasquale,* 443 U.S. 368, 397, 406, 99 S.Ct. 2898, 2914, 2919, 61 L.Ed.2d 608 (1979); *Rovinsky v. McKaskle,* 722 F.2d 197, 201 (5th Cir.1984).

**26.** *See, e.g., Davis v. Estelle,* 529 F.2d 437 (5th Cir.1976).

**27.** *See United States v. Kingston,* 801 F.2d 733, 735 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1888, 95 L.Ed.2d 495 (1987).

dence at trial. Other "inherent" parts of trial are performed in the judge's presence but are not so inherently judicial that they must be performed *by* the judge. Fed.R. Crim.P. 31(a) requires that the verdict be returned "*to* the judge in open court." Yet it is common practice for the verdict to be returned to a clerk, reviewed by the court, and then read aloud by the clerk. And in this case, as is customary, the clerk administered the oath to the jury and the witnesses.

The conduct of voir dire is not considered so inherently judicial as to be non-delegable in civil cases. In *Puryear v. Ede's Ltd.*, [28] this court held that, after consent by the parties, a magistrate may conduct the *entire* trial of a civil jury case and enter final judgment. The panel found that the Magistrates Act is "saved from any constitutional infirmity by its requirement that all parties consent to such [delegation] and by the power of the district court to vacate the reference to the magistrate on its own motion." The court noted, "Each circuit facing this question has reached a similar conclusion." [29] In *Archie v. Christian*, [30] moreover, this court sitting *en banc* held that a civil trial conducted by a magistrate, even in the *absence* of consent by both parties, should not be set aside. If the delegation of voir dire to a magistrate does not violate the "right of trial by jury" guaranteed by the Seventh Amendment, I do not see why it violates the Sixth Amendment right to "trial, by an impartial jury of the State and district wherein the crime shall have been committed," or the Article III guarantee that "[t]he trial of all Crimes, except in Cases of Impeachment; shall be by Jury."

Even the delegation to magistrates of tasks considered to be "*inherently judicial*" in felony trials has been approved by other circuits. In *United States v. Saunders*, [31] a Ninth Circuit case, the jury began deliberating on a Friday afternoon at about 4:30. The trial judge, for reasons that do not appear in the opinion, left a magistrate in charge of the proceedings. Shortly before 6:00 p.m., the magistrate sent for the jury. He learned that a verdict was not imminent and asked the jury to reconvene on Monday morning as the trial judge had instructed him to do. Three of the jurors informed the magistrate that they could not be present on Monday. None of the jurors objected to staying later on Friday or to returning Saturday morning. Although the magistrate was unable to reach the trial judge, he instructed the jury to continue deliberations that evening. Half an hour later, the jury returned a guilty verdict. On appeal, the court rejected Saunders' argument, based on a constitutional separation-of-powers thesis, that the magistrate exceeded his authority in directing the jury to continue deliberations.

The court observed that "inherently judicial" tasks must be performed by Article III judges,[32] but concluded:

We find it unnecessary to decide whether the magistrate here performed an inherently judicial function. Despite the requirement that such functions be performed by Article III judges, the Supreme Court has recently upheld the constitutionality of certain judicial actions by magistrates. Under the "para-judge" rationale, the Magistrates Act comports with Article III because it subjects magistrates' rulings to de novo determination by a federal district judge. *See United States v. Raddatz,* 447 U.S. 667, 681–684, 100 S.Ct. 2406, 2415–16, 65 L.Ed.2d 424 (1980) (magistrate conducted suppression hearing); *Mathews v. Weber,* 423 U.S. 261, 266–72, 96 S.Ct. 549[, 46 L.Ed.2d 483] (1976) (social security case referred to magistrate for preliminary findings and recommendation). *Thus, the Supreme Court has allowed magistrates to perform "inherently judicial" tasks when*

---

**28.** 731 F.2d 1153 (5th Cir.1984).

**29.** *Id.* at 1154.

**30.** 808 F.2d 1132 (5th Cir.1987) (en banc).

**31.** 641 F.2d 659 (9th Cir.1980), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981).

**32.** *Id.* at 663, *citing Glidden Co. v. Zdanok,* 370 U.S. 530, 549, 82 S.Ct. 1459, 1472, 8 L.Ed.2d 671 (1962); *In re Bakelite Corp.,* 279 U.S. 438, 458, 49 S.Ct. 411, 416, 73 L.Ed. 789 (1929).

*under the supervision of an Article III judge.*[33]

A later Ninth Circuit decision relied on *Saunders* in rejecting a similar argument. In *Hinman v. McCarthy,*[34] the State of California had appealed from a district court order granting a writ of habeas corpus. The State argued that 28 U.S.C. § 636(b)(1)(B), which authorizes federal magistrates to conduct evidentiary hearings in habeas proceedings, violates Article III. The court upheld the delegation, stating:

> Although magistrate[-conducted] evidentiary hearings and subsequent recommended disposition of habeas corpus petitions might be considered "inherently judicial" tasks, under *Raddatz* delegation of those responsibilities cannot be considered unconstitutional as the district judge retains the power to make the final decision. The district judge could, at the request of the habeas corpus petitioner, or on his own motion, conduct his own evidentiary hearing if he deemed it necessary.[35]

In comparison, even if supervising voir dire is considered an "inherently judicial" task, *Raddatz* requires us to sanction it provided the district judge retains the power to make an effective *de novo* review.

Section 636(b)(3) authorizes judges to "assign" magistrates "additional duties" not inconsistent with the Constitution and laws of the United States. District courts impliedly have the power, in assigning these additional duties, to retain the role of making *de novo* determinations. Section 636(b)(1), which explicitly allows magistrates to conduct evidentiary hearings and mandates *de novo* review of actions to which the parties object, in no way detracts from the judge's inherent and implicit reservation of the power to make a *de novo*

determination when delegating other duties to a magistrate.

In this case, although the trial judge had the power to review in advance the proposed voir dire questions or the magistrate's explanation of the case, he did not choose to do so. The parties, however, did not object to any of the questions or to any actions of the magistrate, despite the magistrate's instruction to the defendants to raise any matters with the judge that he needed to consider before trial began. The availability of *de novo* review satisfies constitutional requirements, but it need not be exercised in the absence of a request.[36] The judge's failure to screen the questions or the magistrate's explanation of the case before the magistrate conducted voir dire, therefore, does not constitute a constitutional violation.

Several appellate decisions involving the delegation to magistrates of duties other than voir dire confirm our reading of § 636(b)(3). Even though the trial judge may not be *required* to exercise *de novo* review when the parties have entered no objection, the judge is nevertheless *allowed* to conduct *de novo* review at his discretion. In *Delgado v. Bowen,*[37] the district court had referred a motion for summary judgment to a magistrate, and, although the parties did not object to the magistrate's findings, the district judge reviewed the entire record *de novo* and chose not to follow the magistrate's recommendation. The Seventh Circuit held that the district judge did not act improperly, and emphasized the legislative history of the Federal Magistrates Act, which clearly permits *de novo* determinations by the district judge at all times.[38] In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*[39] the Supreme Court noted that, when judges refer pre-trial motions to a magis-

---

**33.** *Id.* (emphasis added).

**34.** 676 F.2d 343 (9th Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).

**35.** *Id.* at 346–47.

**36.** *Delgado v. Bowen,* 782 F.2d 79, 81–82 (7th Cir.1986); *United States v. Peacock,* 761 F.2d 1313, 1318 (9th Cir.), *cert. denied,* 474 U.S. 847,

106 S.Ct. 139, 88 L.Ed.2d 114 (1985); *see also* 28 U.S.C. § 636(b)(1)(C).

**37.** 782 F.2d 79 (7th Cir.1986).

**38.** *Id.* at 82.

**39.** 458 U.S. 50, 79, 102 S.Ct. 2858, 2875, 73 L.Ed.2d 598 (1982).

trate, the judge remains "free to rehear the evidence or to call for additional evidence." Indeed, in *United States v. Lewis*, [40] this circuit said, "It is for the district court to decide how much [from a suppression hearing] it wishes to rehear." Thus, the district court's authority to make a *de novo* review of voir dire proceedings is not limited to matters about which the parties object. The judge might elect to do so *sua sponte*, but in this case he did not. The Constitution does not require us to mandate *de novo* review in every case.

Both *Raddatz* and circuit court decisions following it have emphasized the distinction between *de novo review* and a *de novo hearing*. Although the district court is not *required* to hold a *hearing* to review all magistrate-conducted suppression hearings, or to do so when the parties contest the magistrate's credibility determinations, the district court nevertheless retains the discretion to hold a new hearing.[41] Similarly, when a magistrate conducts voir dire, the trial judge retains the discretion to review the questions asked, and to question the jurors again on his own.[42] This circuit may choose to institute rules that require the district judge to be available while a magistrate conducts voir dire so that the judge can review contested rulings in court at the time the dispute arises and observe the prospective juror's demeanor; [43] but the absence of these rules in the statute is not an unconstitutional restriction of the trial judge's power of review. Moreover, the absence of any credibility issue in this case renders the judge's failure to observe juror responses in person immaterial.

Review of magistrate-conducted voir dire thus appears no less adequate than review of magistrate-conducted suppression hear-

ings. As the Ninth Circuit assumed in *United States v. Peacock* and as the district court and the parties apparently did in this case, the district judge *could* review the conduct of voir dire at his discretion and *would* do so at the request of the parties. *How* the district judge should proceed—e.g., whether he should screen questions in advance—addresses a procedural matter and not the *per se* unconstitutionality of the delegation itself.

Depending on the procedure followed, adequate superintendence of the magistrate's conduct of voir dire by the district judge might be difficult in some cases. No problems arose here. None has arisen in any of the other cases in which the magistrate has been permitted to conduct voir dire. The hypothetical slippery slopes posed by the majority should not be the basis for depriving district judges of the power Congress has expressly given them.

In practice, even before passage of the Magistrates' Act, the Constitution has not been deemed to require the court to conduct voir dire. In *Haith v. United States*,[44] the district court's approval of the delegation of voir dire to magistrates relied partly on the testimony of lawyers that they recalled only *one* criminal case in the Eastern District of Pennsylvania in more than ten years in which the jury was selected *in* the presence of a judge. In addition, the court found that there was never any "absolute common law requirement" that the judge be present during voir dire.[45] And in *Stirone v. United States*,[46] voir dire was supervised by a deputy clerk.

Centuries ago, under the common law of England, challenges for cause were exercised relatively infrequently,[47] probably be-

**40.** 621 F.2d 1382, 1387 (5th Cir.1980), *cert. denied,* 450 U.S. 935, 101 S.Ct. 1400, 67 L.Ed.2d 370 (1981).

**41.** *See Raddatz,* 447 U.S. at 675–81, 100 S.Ct. at 2412–15; *United States v. Hardin,* 710 F.2d 1231, 1235 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 286, 78 L.Ed.2d 263 (1983).

**42.** *See Peacock,* 761 F.2d at 1318.

**43.** *Cf.* Levit, Nelson, Ball and Chernick, *Expediting Voir Dire: an Empirical Study,* 44 S.Cal.L. Rev. 916, 930–36 (1971) [hereinafter cited as Levit].

**44.** 231 F.Supp. 495, 497 (E.D.Pa.1964), *aff'd per curiam,* 342 F.2d 158 (3d Cir.1965).

**45.** *Id.* at 498. *See also Hopt v. Utah,* 110 U.S. 574, 577–79, 4 S.Ct. 202, 203–05, 28 L.Ed. 262 (1884).

**46.** 341 F.2d 253 (3d Cir.), *cert. denied,* 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965).

**47.** Levit, *supra,* at 922.

cause of the more homogeneous nature of jury venires at that time,[48] but they were nevertheless deemed an important part of the defendant's right to a trial by jury.[49] Yet court decisions indicate that it was not remarkable for challenges for cause to be tried to and decided by panels of other jurors rather than by the judge,[50] and that such challenges may have been tried outside the presence of the judge.[51] The majority's citation of a passage in Blackstone's Commentaries, which is expressly limited to challenges by the king and does not mention the practice of trying the defendant's challenges for cause before other jurors, is not to the contrary.[52]

Not only does the delegation of voir dire to a magistrate uphold the integrity of the trial process; it is also consistent with the Article III principle of separation of powers. The Supreme Court has often stated that the tenure and salary guarantees of Article III principally serve a separation-of-powers function; their dominant purpose is "to ensure the independence of the Judiciary from the control of the Executive and Legislative Branches of government."[53] Clearly, the availability of adequate de novo review by the trial judge preserves the independence of the judiciary.[54]

The Supreme Court's decision in *Commodity Futures Trading Commission v. Schor*[55] confirms this separation-of-powers analysis. That opinion emphasizes the importance of an independent judiciary as distinguished from administrative agencies. Article III "safeguards the role of the Judicial Branch in our tripartite system by barring congressional attempts 'to *transfer jurisdiction* [to non-Article III tribunals] for the purpose of emasculating' constitutional courts, and thereby preventing 'the encroachment or aggrandizement of one branch at the expense of the other.' "[56]

This structural principle on which the Court relied does not relate to the performance of duties *within* the judicial branch. A fortiori, there is no reason to condemn a delegation of power *within* the judicial branch by an Article III judge to an officer who is appointed by the court and whose actions are not only under the judge's instructions but are subject to plenary review.

In *Donovan v. Sarasota Concrete Co.*,[57] the Eleventh Circuit considered another

**48.** *See id.;* Moore, *Voir Dire Examination of Jurors: II. The Federal Practice,* 17 Geo. L.J. 13, 36 (1928).

**49.** *See* 4 W. Blackstone, *Commentaries* *352–53; The Trial of Peter Cook (1696), 4 Hargrave's State Trials 738, 748.

**50.** *See* Anonymous, 1 Salkeld 152 (1795); 9 W. Holdsworth, *A History of English Law* 183 (3d ed. 1944); J. Thayer, *A Preliminary Treatise on Evidence at the Common Law* 123–24 (1898); Moore, *Voir Dire Examination of Jurors: I. The English Practice,* 16 Geo. L.J. 438, 442–43 (1928); *see also* Mima Queen v. Hepburn, 7 Cranch 290, 296–97 (1813); J. Goebel and T. Naughton, *Law Enforcement in Colonial New York* 618–19 (1944).

**51.** *See Hopt v. Utah,* 110 U.S. at 577–79, 4 S.Ct. at 203–05; Anonymous, 1 Salkeld 152.

**52.** That passage reads:
   This privilege of peremptory challenges, though granted to the prisoner, is denied to the king by the statute 33 Edw. I. st. 4, which enacts that the king shall challenge no jurors without assigning a cause certain, to be tried and approved by the court. However, it is held that the king need not assign his cause of challenge till all the panel is gone through, and unless there cannot be a full jury without the person so challenged; and then, and not sooner, the king's counsel must show the cause, otherwise the juror shall be sworn.
W. Blackstone, *supra,* at *353.

**53.** *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 59, 102 S.Ct. 2858, 2865, 73 L.Ed.2d 598 (1982); *accord Commodity Futures Trading Comm'n v. Schor,* —— U.S. ——, ——, 106 S.Ct. 3245, 3256, 3257, 92 L.Ed.2d 675 (1986); *United States v. Will,* 449 U.S. 200, 217–19, 101 S.Ct. 471, 482–83, 66 L.Ed.2d 392 (1980); *O'Donoghue v. United States,* 289 U.S. 516, 530–34, 53 S.Ct. 740, 743–44, 77 L.Ed. 1356 (1933).

**54.** *Cf. Raddatz,* 447 U.S. at 681–83, 100 S.Ct. at 2415–16; *Hinman v. McCarthy,* 676 F.2d 343, 346 (9th Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982); *United States v. Saunders,* 641 F.2d 659, 663 (9th Cir.1980), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981).

**55.** —— U.S. ——, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986).

**56.** *Id.* at ——, 106 S.Ct. at 3257 (citation omitted) (emphasis added).

**57.** 693 F.2d 1061 (11th Cir.1982).

type of delegation to a magistrate, that of the power to make a probable-cause determination for the issuance of an administrative warrant. The court stated:

> Under the Magistrates Act, a district court retains general supervisory power to review any action taken by a federal magistrate. This is because the magistrates themselves are not Article III judges. Magistrates are allowed to perform "inherently judicial" acts only because they act under the supervision of an Article III judge. Decisions by a magistrate pursuant to 28 U.S.C. § 636(b) are not final orders and may not be appealed until rendered final by a district court.

The principal consideration prompting the requirement of formal judicial review, and indeed the concept underlying the establishment of an Article III judiciary, is the desire to insulate judicial acts from executive and legislative coercion. *Therefore, the proper method to ensure that a magistrate's determination remains untainted by such coercion is review by an Article III court.* [58]

## IV.

The Magistrates Act expressly authorizes district courts to delegate to magistrates any duty not inconsistent with the Constitution or laws of the United States. These express words are buttressed by a clear declaration of Congressional intent that the office of magistrate be used in an innovative and imaginative way.[59]

Every other circuit that has considered the issues before us has interpreted the Act to permit the delegation of voir dire to a magistrate, and the only circuits that have have considered the constitutionality of such a delegation have upheld it. We should not deprive district judges of the power to use the assistance given them by Congress to make their judicial function more efficient by posing a constitutional spectre in order to reach a statutory interpretation that denies the statutory words their plain meaning.

I therefore respectfully dissent.

---

**58.** *Id.* at 1066–67 (citations omitted).

**59.** *See* Hearings on the Federal Magistrates Act before Subcommittee No. 4 of the House Committee on the Judiciary, 90th Cong., 2d Sess. 81 (1968).